Nicoud vs. Wagner.

---

Nicoud, Respondent, vs. Wagner, Appellant.

*February 6 — February 27, 1900.*

|106      67|
|112    ¹141|

*Appeal: Reversal for want of evidence: Master and servant: Injury from defective machinery: Evidence: Hypothetical questions: Leading questions: Excessive damages.*

1. On appeal a judgment cannot be reversed for want of evidence to support the verdict on which it is based, unless it clearly appears that there is no credible evidence which, in the most favorable view that can reasonably be taken of it, will support the verdict.
2. In an action for personal injuries alleged to have been caused by defects in a traveling crane in the factory in which plaintiff was

employed, it is *held* that the evidence was sufficient to support a finding by the jury to the effect that the crane in use at the time of the accident was the same one that had previously been reported to defendant as defective and unsafe, and also findings that the crane was in fact defective and that its defective condition was the proximate cause of the injury.

3. The evidence is *held* also to have justified the inclusion, in hypothetical questions, of the element of plaintiff's insensibility shortly after the accident.

4. Considerable strictness should be exercised in excluding leading questions put to expert witnesses; but errors in allowing such questions to be answered will not work a reversal unless prejudicial to the appellant.

5. A man forty-four years of age, capable of earning $30 per month at ordinary labor and $75 per month at his trade, was by an injury permanently incapacitated from working at his trade and, in a considerable degree, from working at manual labor at all. The bones on one side of his face were fractured, and the sensory nerve materially and permanently injured, and his brain affected to some degree, permanently. *Held*, that an award of $3,500 as damages was not excessive.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

Action for personal injuries. Plaintiff, while working for the defendant in a structural iron works, was struck and severely injured by the end of a heavy iron beam, suspended several feet from the floor of the factory by a chain attached to a traveling crane, operated by fellow-servants to raise the beam to a sufficient height to enable them to move it to an overhead track running at right angles to that on which the crane was located, there to be moved by another appliance, called an "air hoist," to and through a riveting machine. The claim on the part of the plaintiff was that the crane was insufficient, out of repair, and unsuitable for the work with reasonable safety to employees required to labor in the vicinity thereof; that defendant had notice of the fact; that plaintiff was ignorant of it; that by reason of the use of the defective crane the iron beam was caused to make an unexpected

movement whereby it reached to where plaintiff was working, in the due performance of his duties and in the exercise of reasonable care, and struck him, causing the injury complained of. The claim on the part of the defendant was that the crane was in a reasonably safe condition; that the movement of the beam when it struck and injured plaintiff was caused by the lift chain not being attached to the center of the beam as regards weight, or the way the work was done by plaintiff's fellow-servants, or by plaintiff's negligence.

The following facts were established without substantial controversy: Plaintiff and one or more associates constituted what was called the "setting-up gang." Their work consisted of setting up parts of iron beams or columns into proper forms, and fastening them together with bolts ready to be taken by the riveting gang to the riveting machine by means of the crane and air hoist. There was a pile of columns prepared, as aforesaid, lying on skids under an overhead track on which the crane was operated. The pile was from four to six feet high. Plaintiff was a few feet north of the west end of the pile, unscrewing a bolt in a column that lay on a car resting on a track that ran parallel with the pile. The riveting gang consisted of four persons. Their duty in moving a column from the pile to the air hoist was to place the crane over the center of the pile by moving it on the overhead track; then to engage a hook, attached to the crane pulley at the lower end of the lifting chain, in a chain placed around the center of the column; then, by drawing on the operating chain, to produce the necessary motive power to raise the column free from the pile; and then, by pushing the chain toward the air-hoist track, cause the crane with its load to go to such track.

On the occasion in question, two of the riveting gang, by operating the crane, lifted a heavy column, some eighteen feet long, from the pile. When the column was clear of the pile the west end swung north and in some way struck

the plaintiff's head and severely injured him.   There was evidence to prove that one of the crane chains slipped, causing the column suddenly to drop and swing toward where plaintiff was working and strike him, or that the column swung over plaintiff and that the chain then slipped, allowing it to drop and strike him.   There was also evidence that a crane on the same track, some days before, operated in the same way, and that the cause was a worn condition of some of the working parts of the device, or the loosening of a setscrew that held one of its wheels in position; that defendant had ample notice of those facts, and that they rendered such an accident as the one that occurred liable to happen.   That evidence was disputed.   There was also evidence tending to show that the crane in use at the time of the accident was in perfect condition, and that if there was negligence which caused the swinging or dropping of the iron beam, with the consequences complained of, it was wholly in operating the crane.   There was evidence that it was the duty of the riveting gang to steady the beam as it was hoisted, and to prevent it from swinging, and that on the occasion in question that was neglected.

At the close of the evidence defendant's counsel moved the court for the direction of a verdict, which was denied, due exception being taken to the ruling.   The jury found specially, in substance,—

(1) Plaintiff was injured while in defendant's employ by being struck on the head with an iron beam.

(2) The crane by which the beam was hoisted was so defective as to be insufficient when operated with ordinary care.

(3) Defendant knew, or ought to have known, of the fact found in question No. 2, a sufficient length of time before the accident to have prevented it.

(4) Plaintiff, before the time of the accident, was not chargeable with knowledge of the defective condition of the crane.

(5) The defective condition of the crane was the sole proximate cause of the plaintiff's injury.

(6) The crane was operated with ordinary care.

"We assess the plaintiff's damages at $3,500."

There were several other findings, but they were not inconsistent with the foregoing, and are not material to the questions discussed in the opinion. Judgment was rendered on the verdict in plaintiff's favor.

For the appellant there was a brief by *Van Dyke & Van Dyke & Carter*, and oral argument by *W. E. Carter.*

*J. C. Officer*, attorney, and *J. W. Wegner*, of counsel, for the respondent.

MARSHALL, J. The most important question presented on this appeal was raised below by the motion of defendant's counsel for a verdict in his favor for want of evidence to show that the crane in use at the time of the accident was defective, or that the injury complained of was caused by any such defect or any negligence on the part of the defendant. The same question was raised by a proper motion after verdict.

The rule is elementary that, on appeal, a judgment cannot be reversed for want of evidence to support the verdict on which it is based, unless it clearly appears that there is no credible evidence which, in the most favorable view that can reasonably be taken of it, will support the verdict.

Within the range of reasonable probabilities, viewing the evidence from the standpoint of common sense and experience, the province of the jury to say where the truth lies as to the facts is exclusive, subject only to the discretionary control of the trial court when the finding is clearly against the preponderance of the evidence. When the reasonable probabilities are all one way, so clearly that different minds cannot reasonably differ about it, a jury has no more right to say the truth is otherwise, and have that stand as bind-

ing between parties, than the court has in a jury case to say what are the proper deductions of fact to be made from conflicting reasonable evidence or inferences therefrom.

By keeping the principles stated clearly in mind, not invading the legitimate province of the jury or allowing the jury to invade the province of the trial court, or such court to shift its legitimate responsibility onto the jury, our system of jurisprudence in legal actions will demonstrate perfection as near as human wisdom, up to the present time, has been able to attain in that field of civil government.

So it follows, as before indicated, that the judgment appealed from cannot be disturbed as contrary to the evidence, unless there is an entire absence of credible evidence to support some essential fact or facts in the case, and that reasonable minds cannot reasonably differ in that regard, keeping in mind, however, that the trial court, having better facilities for determining that question than this court, has determined it in the negative, and that such determination should prevail unless clearly wrong. *Maitland v. Gilbert P. Co.* 97 Wis. 476; *Powell v. Ashland I. & S. Co.* 98 Wis. 35; *Lewis v. Prien,* 98 Wis. 87; *Flaherty v. Harrison,* 98 Wis. 559; *Cawley v. La Crosse City R. Co.* 101 Wis. 145; *Clifford v. M., St. P. & S. S. M. R. Co.* 105 Wis. 618.

The foregoing stated doctrine is particularly applicable to this case, because the character of the evidence is such that the trial judge and jury had superior facilities in a high degree, to what are possessed here, for understanding and weighing such evidence. The principal witness on the part of the plaintiff,— the one whose evidence, as it seems, appellant's counsel concedes, if credible, is fatal to his contention that the verdict of the jury is wholly without evidence to support it,— was a person of such limited knowledge of the English language that the placing of his ideas of the facts intelligently before the jury was attended with considerable difficulty. Then again, the trial court and jury

had the benefit of seeing a device of the kind used on the occasion of plaintiff's injury, of examining its working parts, and of having them carefully explained, and the particular location of the alleged defects in the crane that caused the mischief complained of, and the nature and probable effect of such condition, carefully pointed out by witnesses.

Applying what has been said to the evidence, from all the light we can glean from it, we are unable to come to a satisfactory conclusion that the trial judge was wrong in deciding that there was credible evidence which a jury had a right to believe, and upon it to base a finding in plaintiff's favor, as to the alleged defective condition of the crane, knowledge of it by the defendant, and that such condition was the sole proximate cause of the injury. It is useless to say how the evidence strikes us as we read it, as regards where the clear weight thereof is, for that is not before us. As to the question on which side the major probabilities are, where there are reasonable probabilities both ways, however much those on one side may appear here to overbalance the other, the judgment of the jury, approved by the trial court, must, as before indicated, stand as the infallible truth. For that reason, trial courts should exercise their power freely and firmly, to prevent injustice, when a jury goes plainly against the preponderance of the evidence.

No need appears to prolong this opinion by a careful and extended discussion of, and quotation from, evidence, to show the grounds of our conclusion that the verdict of the jury is not clearly against all reasonable probabilities. We may safely say that a person, looking at the evidence from the standpoint of a partisan, intensely interested for his client, and with that interest intensified by an honest conviction that injustice has been done, might reasonably conclude that the verdict of the jury is not only against the preponderance of the evidence, but contrary to every reasonable probability. That situation may, and probably does, often

happen, yet an unbiased judicial study of the evidence lead to a different conclusion.  The line between reasonable probability and mere conjecture is not infrequently so indistinct that whether it be discovered or not depends upon the point of view from which the mental observation is taken.

. The point urged here with greatest confidence by appellant's counsel, on the subject of the verdict being contrary to the evidence, is that there is no evidence whatever to identify the crane in use at the time of the accident with that previously reported to defendant as defective and unsafe; that the jury were permitted to find the fact in that regard by mere conjecture.  The witness Much, who gave the only evidence on the subject, said there was no other crane on that track, speaking of the track the crane was worked on at the time of the accident.  To the question, "Are you able to say that it was the same crane that you told the foreman about?" the witness said, "It was on the same track. Yes, sir.  It was on the same track as was the other crane." The witness, however, said, that after he complained to the foreman about the defective crane he kept watch of it and knew where it was.  True, the evidence is not entirely satisfactory as it reads in the record, but it is not beyond reason to say that the witness intended to be understood to testify that, from the time he observed the defective crane down to the time of the accident, it remained on the track where he first observed it, and was in use at the time of the accident.  After some controversy as to whether the witness had identified the defective crane as the one in use at the time of the accident, this question was asked him: "I will ask you now whether the crane through which *Mr. Nicoud* got hurt was the same crane that you saw fall down several times within a day or so previous to the time that *Nicoud* got hurt?" to which he answered, "Yes.  There was only one crane on that track." He further said, "I saw

it come apart and fall down two or three days before the accident. I saw the chain slip and let the load down five feet. I noticed the chain slip several times before the accident. Sometimes it slipped a foot and sometimes half a foot." There was considerable more evidence from the witness of like character, clearly given with reference to the crane in use at the time of the accident being the same as the one which was so defective as to render the chains liable to slip and drop the load suspended therefrom.

So it will be seen that, instead of there being no evidence that the defective crane of which the foreman had been notified was the one in use at the time of the accident, the jury had a right to regard the evidence of Much as very positive on the question. True, there was evidence of there being many cranes in the factory, and that they were liable to be changed about, but that only went to the credibility of Much's evidence, without rendering it contrary to all reasonable probabilities. There were many circumstances, and much evidence, bearing on the credibility of Much, but we are unable to say he was so impeached that the jury was bound to reject his evidence. There is less difficulty as regards the crane being in fact defective, and its causing the movement of the iron beam that inflicted the injury upon plaintiff, than in regard to the question above discussed, though it is true that the opposing evidence was very strong. We will not further pursue this branch of the case.

It is urged that the court improperly permitted hypothetical questions which assumed that there was evidence tending to prove that plaintiff was insensible shortly after the accident. We are unable to discover any difficulty in that regard. There seems to have been ample evidence to justify including that element in the question. Plaintiff testified that the blow upon his head made him kind of unconscious; that he was unconscious at least for a second or two; that he was taken to the engine room, but whether he was

carried or he walked he was unable to say; that he was taken from the engine room to the office, and there attended by a doctor; that he became dizzy while in the office, but came to on being brought out into the fresh air; that he found himself, after being in the office, in a carriage, and that the next thing he remembered was, he was at home in bed; that the night after the injury he was insensible all night.    The mention of that evidence is a sufficient answer to the assignment of error in regard to the hypothetical questions.

Error is assigned because some leading questions were permitted.    There is good ground for saying that the rights of defendant were violated in the conduct of the trial as regards matters of that kind, particularly with reference to the evidence of physicians while testifying as experts.    The evidence of such witnesses is so liable to be biased and to promote injustice, that courts should confine questions put to them within the rules with considerable strictness.    It is not improbable that the fact that violations of the rule against leading questions do not ordinarily constitute reversible errors, has too much influence toward a lax administration of it.    It is proper to say that such tendency is one to be guarded against at all times, and particularly in regard to a class of witnesses who have come to be considered biased when testifying in a legal controversy, as much as parties or attorneys, and less entitled to credit because their testimony is confined to a field where pure conjecture and speculation can often run riot without any check except by witnesses of the same kind, because special study and experience is conclusively presumed to be necessary to enable a person to enter the field at all.    These observations seem to be justified by a study of the leading questions allowed in this case.    However, we are unable to say that defendant was prejudiced by them, therefore the errors in allowing the questions to be answered must be regarded as

harmless and not sufficient cause for reversing the judgment.

Exceptions were taken to instructions that assumed the existence of evidence tending to show that the crane in use at the time of the accident was the one testified to as having been reported to the defendant's foreman as defective, some time before. What has been said regarding evidence on that point sufficiently answers the assignment of error.

There are some other assignments of error, all of which have been considered without discovering anything that can properly work a reversal of the judgment. It is urged that the damages assessed are excessive. The range that a jury may take in assessing damages, where pain and suffering of a severe character, past and future, and other elements of loss, past and prospective, exist, to be compensated for in money, for which there is no definite standard of measurement, is so great that it is difficult to determine whether they have gone so far beyond reason as to evidence passion and prejudice, the only ground of reversal for excessive damages. *Goodno v. Oshkosh*, 28 Wis. 300; *Templeton v. Graves*, 59 Wis. 95; *Mechelke v. Bramer*, 59 Wis. 57. We cannot say the jury passed the ·bounds of reason in this case, though it is true that the damages appear to have been allowed with quite a liberal hand.

It was said, in substance, in *Templeton v. Graves, supra*, that the mere fact that damages are allowed very liberally will not warrant the court, on appeal, in reversing the judgment. Trial courts have a much greater supervisory control in that field than appellate courts. Upon them devolves the duty, exclusively, of preventing injustice by too large an assessment of damages, unless the amount clearly exceeds the bounds of reason in view of the evidence. We cannot say that in this case, as before remarked.

The plaintiff was forty-four years of age, capable of earning $30 per month at ordinary labor, and $75 per month at his trade. The injury permanently incapacitated him from

working at his trade, and permanently disabled him, in a considerable degree, from working at manual labor at all. The injury rendered him unable to do work requiring him to stoop over. In doing such work it was necessary for him to get down upon his knees. The bones of his face on one side were fractured, and the sensory nerve, furnishing sensation to that side of the face, was materially and permanently injured. His head was so injured as to affect his brain to some degree, permanently. There are many other matters bearing on the subject of damages, that might be mentioned, but enough has been said to show that the evidence tended to show at least that plaintiff was so severely and permanently injured that a considerable sum of money was required to adequately compensate him for his loss, and that the correct amount was very difficult of accurate determination.

The result of what has been said requires that the judgment appealed from be affirmed.

*By the Court.*— So ordered.