Dorwin v. Hagerty, 137 Wis. 161.

DORWIN, Respondent, vs. HAGERTY, Appellant.

*November 14—November 27, 1908.*

*New trial: Sufficiency of evidence: Appeal and error: Review: Evidence considered: Brokers: Action for commissions: Findings by jury: Trial: Special verdict: Interrogatories: Construction.*

1. If there is any credible evidence in the case to support the findings of the jury it is error to set aside such findings as are so supported and grant a new trial.
2. Where findings in favor of the defendant in a special verdict are supported by credible evidence, on appeal from an order setting aside such findings it is unnecessary to consider the evidence offered by the plaintiff on the trial, except in so far as it may tend to render that offered by the defendant so inherently incredible as not to be worthy of belief.
3. In an action on a note claimed to have been executed to plaintiff's assignor in consideration of the services of the assignor in securing a purchaser for a boat, the evidence, stated in the opinion, is *held* to support findings by the jury in favor of the defendant.
4. In an action on a contract whereby a broker was to procure a purchaser for defendant's interest in a boat, the broker claiming to have procured such a purchaser by the name of H., it appeared to be doubtful whether such a person as H. ever agreed to purchase. As part of the special verdict the court submitted an interrogatory: "Do you find there was such a man as H.?" instead of asking what the fact was in reference to his existence or nonexistence. *Held:*
   (1) The jury could not be misled by the form of the question.
   (2) The answer "No" meant there was no such man in the transaction.
5. In an action by a broker for commissions, the evidence, stated in the opinion, is *held* to support findings by the jury that H., an alleged purchaser, was not a purchaser ready, able, and willing to pay the purchase price, and that there was in fact no such person as H.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, Circuit Judge. *Reversed.*

This action is brought upon a nonnegotiable promissory note for $500, executed and delivered by the defendant to one W. H. Clawson, which note was assigned by said Clawson to one W. B. Allen, and was assigned by said Allen to the plaintiff. The alleged consideration for the note was the procuring of a purchaser by Clawson for a steamboat owned in part by the defendant. The defenses interposed were: (1) That Clawson fraudulently represented that he had a purchaser who stood ready and willing to buy the boat at the price fixed by the defendant, when in fact no such purchaser had been secured; and (2) that said note was delivered to Clawson with the understanding and agreement that his principal should deposit the purchase price of the boat in a Green Bay bank by a certain date, whereupon the necessary papers transferring title to the purchaser would be deposited in such bank, and that in the event of such purchase price not being so deposited no commission should be payable on account of the sale and the note in suit would not be used in any way. The purchase price of the boat was not deposited.

The jury returned the following special verdict:

"(1) Did W. H. Clawson, acting upon the defendant's written offer of June 18, 1904, procure a purchaser for the steamer Belle in H. H. Hayward, who was ready, able, and willing to buy the boat and pay for it $7,500 ? *A.* No.

"(2) Did the defendant *Hagerty* accept the terms of the offer in the telegram of June 19th, viz., that he should place in Kellogg Bank bill of sale of the steamer Belle, giving clear title by Wednesday? *A.* No.

"(3) Was it agreed between Clawson and *Hagerty* on June 20, 1904, that this note that *Hagerty* gave Clawson for $500 for his commission for selling the boat should not be used by him until after the $7,500 purchase price was deposited in the Kellogg Bank? *A.* Yes.

"(4) Was it agreed between said Clawson and the de-

-fendant *Hagerty* that the money or check should be deposited in the bank before the defendant was to deposit the bill of sale in the bank?   *A.*  Yes.

"(5) Was the reason why said money was not deposited the failure of *Hagerty* to offer or deposit a bill of sale of the boat in the bank?   *A.*  No.

"(6) Did *Hagerty* ask from Hayward, through Clawson, an extension of time to perfect title to the boat?   *A.*  No.

"(7) If you should answer the first question 'No,' then answer this: Do you find that there was such a man as H. H. Hayward?   *A.*  No."

The trial court, on motion of plaintiff, changed the answers of the first, second, fifth, and seventh questions from "no" to "yes," and set aside the answers to the fourth and sixth questions without substituting any answers in lieu of those returned by the jury.   From a judgment entered in plaintiff's favor upon the modified verdict the defendant appeals.

For the appellant there were briefs by *Sheridan & Evans,* and oral argument by *Philip Sheridan* and *Daniel Sullivan.*

For the respondent there was a brief by *Cady, Strehlow & Jaseph,* and oral argument by *M. H. Strehlow* and *S. H. Cady.*

Barnes, J.   This is not a case wherein the trial court exercised its discretion to set aside the verdict of the jury and order a new trial because the verdict was against the preponderance of the testimony.   As to one of the substantial questions in the case the trial judge stated in his opinion that it had been passed upon by three juries on substantially the same testimony and that each jury had found adversely to the contention of the plaintiff as to what the fact was.   The plaintiff made no motion for a new trial and stated that none was desired.   He insisted that he was entitled to have the answers made by the jury to the questions in the special verdict changed and to judgment on the verdict as corrected.   If

he failed in this contention he evidently preferred that judgment should go against him rather than that a new trial should be ordered.

If there was any credible evidence in the case supporting the findings of the jury it was error to set aside such findings as were so supported. *Bading v. Milwaukee E. R. & L. Co.* 105 Wis. 480, 81 N. W. 861; *Nicoud v. Wagner,* 106 Wis. 67, 72, 81 N. W. 999; *Prahl v. Waupaca,* 109 Wis. 299, 302, 85 N. W. 350; *Wunderlich v. Palatine F. Ins. Co.* 104 Wis. 382, 80 N. W. 467. It is therefore unnecessary to consider the evidence offered by the plaintiff on the trial, except in so far as it may tend to render that offered by the defendant so inherently incredible as not to be worthy of belief.

It appeared from the testimony that on Saturday evening, June 18, 1904, the defendant agreed in writing to give W. H. Clawson $500 commission if he made, or was instrumental in making, a sale of the steamer Belle at $7,500. On Monday, the 20th, Clawson showed defendant a telegram which read as follows:

"Chicago, June 19, 1904. W. H. Clawson, care American House, Green Bay, Wis. Close deal at seventy-five hundred clear title in my name by Wednesday place in Kellogg Bank. [Signed] H. H. Hayward."

The defendant testified that, upon receipt of the foregoing telegram, Clawson called upon him and informed him that he was obliged to go to Chippewa Falls and wanted his commission; that he refused to pay it; that Clawson represented that he knew Hayward well and that he was worth $100,000 and lived at Elk Rapids, Michigan; that he informed Clawson he would not place the bill of sale and other necessary papers in the bank until the purchase price was first deposited; that Clawson said he would immediately wire and have the money placed on deposit by the following Wednesday morning, and that if the money was not so deposited he would not use the note which the defendant finally agreed to give

him for his commission. Mr. Flatley, an apparently disinterested witness, corroborates the foregoing testimony of the defendant in all material particulars. The defendant further testified that the reason why he did not deposit the bill of sale of the boat was that the money had not been deposited, and that he was able to carry out his part of the agreement at any time upon the deposit being made. The defendant owned a half interest in the boat and Captain Cusick owned the other half subject to a mortgage held by the defendant, and Mr. Cusick testified that he was willing to sell on the basis of $7,500. At the foot of the note in suit the following words were written by the defendant: "This note is given in accordance with the agreement with Mr. Clawson." The defendant testified that the agreement referred to was the one whereby Clawson agreed he would not use the note in any way until the purchase price of the boat was deposited in the bank. Defendant's evidence is direct to the point that he never agreed to accept the offer contained in the telegram referred to, but did agree to execute and deliver the necessary papers if the purchase price were deposited. His testimony is equally clear that the tenor and effect of the agreement with Clawson was that no commission was earned by him until the purchase money was actually placed in the bank.

There certainly was nothing inherently improbable in the evidence of the defendant or in that of Mr. Flatley corroborating it. Clawson was practically a stranger to the defendant and Hayward was entirely so, if in fact he was not a myth. A transfer of property often calls for an examination of titles and an abstract of title, as well as the draft of conveyances, so that considerable legal and other expenses are frequently incurred in reference thereto. In this case the transfer involved some negotiations with a joint owner with whom the defendant apparently was not on friendly terms. It was very natural, all things considered, that defendant desired to protect himself against needless expense by assuring

himself that the money was forthcoming to consummate the deal before he undertook to place his conveyance in the bank.

By the answers to the second, third, fourth, and fifth questions in the special verdict the jury in effect found that the defendant did not accept the conditions of the telegram of June 19th; that Hayward, through Clawson, agreed to deposit the purchase price of the boat in the bank before defendant should be called upon to place the necessary conveyance of the boat therein; and that Clawson was not entitled to any commission until such money was deposited. It seems to us that the testimony was sufficient to support each and every of the answers to the questions referred to. It is true that a note was actually given to cover the amount of the commission, but it is also true that a reasonable explanation was offered for such action on the part of the defendant, not inconsistent with his claim that the note was not to constitute any obligation on his part in the event of the failure of Hayward to deposit the purchase money as agreed.

Undoubtedly the jury had in mind the same facts when answering the first and seventh questions in the special verdict, and found that Clawson did not procure a purchaser who was able, ready, and willing to buy the boat because the alleged purchaser was fictitious. The form of the seventh question is subject to criticism, in that it asks the jury, "Do you find that there was such a man as H. H. Hayward?" instead of asking what the fact was in reference to his existence or nonexistence. The jury, however, could hardly have been misled by the form of the question, and evidently intended to and did find, as a matter of fact, that there was no such man. The answers to these two questions were changed from "no" to "yes" by the court. In view of the conclusion reached in reference to the other questions in the special verdict no useful purpose would be served by an extended discussion of the evidence bearing upon questions 1 and 7. We are satisfied from a careful examination of all the testimony in the case

that the jury was warranted by the evidence in answering these questions as it did. The entire transaction was tinged with suspicion. It is difficult, after a careful reading of the record, to give such transaction so clear a certificate of character that it can be fairly said that there is no evidence for the verdict of the jury to rest upon. Clawson testified that Hayward visited Green Bay in company with an expert and examined the boat. Both Hayward and his expert disappeared from sight thereafter and could not be found. No reason is apparent why, when Hayward went to Green Bay, he did not apprise one of the owners of the boat of his presence and make the best trade he could. Instead he intrusted to Clawson the matter of making the purchase, who was to receive $500 for services that apparently called forth little effort on his part.

Defendant testified that Clawson represented that Hayward lived at Elk Rapids, Michigan, and was worth $100,000. No such party lived there or was known there. No such man registered at any of the Green Bay or De Pere hotels the day it was claimed by plaintiff that Hayward was in both places. Clawson testified that he received a certified check from Hayward, drawn on a Chicago bank, for the price of the boat, but returned it because title was not furnished as agreed. The letter accompanying this check was not produced, and defendant was never notified by Clawson that he had such a check. Mr. Wagner, a bank cashier, testified that it was a custom among banks to keep a record of certified checks, and that he wrote the banking concerns in Chicago, ninety in number, in reference to the issuance of such a certified check, and received answers from all but three or four of them. None of the answering banks had any knowledge of the alleged check. The same witness testified that a letter purporting to have been written by Hayward to defendant under date of July 8th was in fact in Clawson's handwriting. If Hayward exists in flesh and blood and is the wealthy and

prominent business man that defendant testified he was represented to be, he certainly succeeded in completely obliterating himself after the transaction in question took place. Aside from the evidence of Clawson and the telegrams produced by him, the genuineness of which is necessarily involved, there is little in the record to support the finding of the court upon questions 1 and 7.

Mr. Clawson was arrested, tried, and convicted in the municipal court of Brown county of the offense of having obtained the note in suit under false pretenses. The judgment in that case was reversed in this court. *Clawson v. State,* 129 Wis. 650, 109 N. W. 578. It was there held that the evidence was insufficient to sustain the verdict of the jury. It is not claimed that anything said by this court in that case is *res adjudicata* in this, but it is asserted, properly enough, that the criminal case is in point in so far as it passes upon the same questions that are here involved, provided the evidence on the two trials was substantially alike.

The record in the criminal case is not before us, but from an examination of the evidence as it appears in the printed case it seems to us that the evidence produced upon the two trials is different in a number of important particulars. The witness Flatley was not called upon to testify in the criminal case to any of the facts referred to in the foregoing opinion. There was no evidence in the criminal case tending to show that the letter of July 8th, purporting to have been written by Hayward, was in Clawson's handwriting. There was no evidence in the criminal case tending to show that no check had been certified for Hayward by any Chicago bank at or about the time Clawson claimed to have received the Hayward check. The evidence of the witness Lonzo, to the effect that he had seen the certified check in Clawson's possession, was one of the most convincing pieces of evidence given in the defendant's favor on the trial of the criminal action. On the last trial several witnesses testified that Lonzo's reputa-

-tion for truth and veracity was bad and that they would not believe him under oath. No attempt was made to show that his reputation was otherwise than as testified to by such witnesses.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to set aside the answers made by the court to the first, second, fifth, and seventh questions in the special verdict, and to reinstate the answers returned by the jury to all of the questions in such verdict, and to enter judgment on such verdict as corrected, in favor of the defendant.