Francis J. PRUSS and Grace E. Pruss, Appellees,

v.

IOWA DEPARTMENT OF REVENUE, Appellant.

No. 67496.

Supreme Court of Iowa.

Feb. 16, 1983.

Thomas J. Miller, Atty. Gen., Harry M. Griger, Sp. Asst. Atty. Gen., and Mark R. Schuling, Asst. Atty. Gen., for appellant.

Francis J. Pruss, Cedar Rapids, for appellees.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McCORMICK, and CARTER, JJ.

UHLENHOPP, Justice.

This appeal requires us to construe a statute of limitations in the Iowa income tax law as it existed in section 422.73 of the Iowa Code of 1975.

Taxpayers Francis J. and Grace E. Pruss had an operating profit in 1972 but an operating loss in 1975. They filed Iowa individual income tax returns for those years within the required times, and timely paid the tax for 1972. On January 24, 1979, under carry-back loss provisions of the income tax law, taxpayers filed an amended 1972 Iowa return taking a deduction for the loss in 1975 and asking for a refund of the 1972 tax. The Iowa director of revenue on behalf of the revenue department denied a refund on the ground that the claim was untimely. Taxpayers obtained judicial review in district court, which reversed. The director then appealed to this court.

I. At the outset a question of exhaustion of administrative remedies confronts us. Taxpayers sought judicial review under section 17A.19 of the Iowa Administrative Procedure Act (IAPA) from the decision of the director of revenue. Paragraph 1 of section 17A.19 provides in part: "A person or party who has exhausted all adequate administrative remedies and who is aggrieved or adversely affected by any final agency action is entitled to judicial review thereof under this chapter." This provision in itself requires exhaustion of adequate administrative remedies.

The problem is that section 421.1 of the Iowa Code establishes a state board of tax review, and paragraph 4 of the section provides that the board has the responsibility to exercise the "general" power and duty upon its own motion or upon appeal by any affected taxpayer "[to] review the record evidence and the decisions of, and any order or directive by, the assessment and collection of taxes by the department . . . and . . . expeditiously affirm, modify, reverse or remand the same." Taxpayers did not seek review by the board before going to the district court.

Several statutes in the taxation title of the Code are involved. The first is the general provision, section 421.1, which we have already set out. The second involves a group of provisions. Chapters 428, 433, 434, 437, and 438 relate to certain property assessments by the director. Section 429.1 provides that the director must notify the taxpayer of the valuation he places on the property under those chapters, and inform the taxpayer of the right to appeal to the board of tax review. Section 429.2 provides that notwithstanding IAPA, the taxpayer has thirty days from that notice to appeal to the board. Then section 429.3 provides: "Judicial review of the action of the state board of tax review may be sought by the taxpayer in accordance with the terms of chapter 17A [IAPA]."

The third statute is chapter 422 of the Code. That chapter contains four main taxes: personal income tax, business tax on corporations, sales tax, and tax on financial institutions. Section 422.29, in the part of the chapter relating to the personal income tax which is involved in this case, provides in its first sentence, "Judicial review of actions of the director may be sought in accordance with the terms of the Iowa administrative procedure Act." The section goes on to provide that the petition for judicial review may be filed in specified counties within sixty days of notice of the director's decision; that bond shall be filed, conditioned on performance of the order of the court; and that appeal may be taken from district court to this court irrespective of the amount involved. Similar sections appear in the division of the chapter relating to the business tax on corporations, § 422.41, the sales tax, § 422.55, and the tax on financial institutions. § 422.66.

The fourth statute is section 425.31, relating to property tax relief for elderly and disabled individuals. Under that section, actions of the director of revenue may be appealed to the state board, or direct judicial review may be had.

The fifth statute is section 450.59, which allows direct judicial review of the action of the director with regard to the inheritance tax.

We have, then, five statutes to consider. First, under section 421.1(4) the state board has *general* power relative to assessment and collection of taxes, on its own motion or appeal by a taxpayer, to review the evidence, decisions, orders, and directives of the director, and to affirm, reverse, modify, or remand.

Second, the state board has *specific* authority under chapter 429 to entertain certain property tax assessment appeals, with judicial review authorized following the board's decision.

Third, *specific* authority for judicial review of actions of the director is provided in the four divisions of chapter 422, pertaining to the four types of taxes in that chapter.

Fourth, the state board has *specific* appellate authority regarding actions of the director, and the district court has *specific* alternate jurisdiction, under section 425.31 relating to tax relief for the aged and disabled.

Fifth, *specific* authority for judicial review of actions of the director is provided in section 450.59 relating to the inheritance tax.

We confronted a somewhat similar problem in *Ellis v. Iowa Department of Job Service*, 285 N.W.2d 153 (Iowa 1979). That case involved section 17A.19(1), which we have here, making exhaustion of all adequate administrative remedies prerequisite to judicial review. Section 17A.16 authorizes an application for rehearing before an

agency, but Ellis did not seek a rehearing. The employer asserted that Ellis had therefore not exhausted that administrative remedy. Section 17A.19, however, provided that if a party sought a rehearing, a petition for judicial review had to be taken within thirty days after the petition was denied; but if the party did not seek a rehearing, the petition for judicial review had to be filed within thirty days of the agency's final decision. We held these provisions demonstrated that a rehearing was not prerequisite to judicial review.

■ Reading section 421.1(4), chapter 429, chapter 422, section 425.31, and section 450.59 together and endeavoring to harmonize them, *Committee on Professional Ethics and Conduct v. Shaffer,* 230 N.W.2d 1, 2 (Iowa 1975), and giving effect to all their parts, *Boomhower v. Cerro Gordo County Board of Adjustment,* 163 N.W.2d 75, 76 (Iowa 1968), we hold as follows with respect to the exhaustion requirement of section 17A.19(1). In cases which otherwise qualify for judicial review:

■ (1) Actions of the director of revenue (a) coming within chapter 422, section 425.31, and section 450.59 *may,* and (b) coming within other statutes *must,* first be appealed to the state board, and judicial review may then be had of decisions of the board; and

■ (2) Direct judicial review *may* alternatively be had of actions of the director of revenue coming within chapter 422, section 425.31, and section 450.59.

■ The present case involves action of the director coming within chapter 422, and taxpayers properly exercised their alternative to have direct judicial review.

■ II. The appeal itself presents a close question of statutory construction, necessitating an historical review of the statute involved. As part of the three-point tax act of 1934 (personal income tax, corporate business tax, and sales tax), the General Assembly incorporated this section in the administrative sections of the act:

Sec. 58. CORRECTION OF ERRORS. If it shall appear that, as a result of mistake, an amount of tax, penalty, or interest has been paid which was not due under the provisions of this act, then such amount shall be credited against any tax due, or to become due, under this act from the person who made the erroneous payment, or such amount shall be refunded to such person by the board.

1933–34 Iowa Acts Extra Sess. ch. 82, § 58. The title of the section which we have capitalized was not inserted by the code editor; it was in bold-faced type in the act itself, and was carried into the Code and all succeeding Codes in bold face. The words in the section, "as a result of mistake," were not only in the original text; they have remained in the section to this day. Iowa Code § 422.73(1) (1981). We would have much difficulty concluding that the General Assembly did not realize this was a section dealing with refunds and credits for *mistakes.*

The first pertinent amendment to the section occurred seven years after the section was enacted. 1941 Iowa Acts ch. 236, § 1. The General Assembly added this sentence to the section:

No claim for refund that has not been filed with the commission within five (5) years after the tax payment upon which a refund is claimed became due, or one year after such tax payment was made, whichever time is the later, shall be allowed by the commission.

The director argues that the section as thus amended constituted and still constitutes a limitation statute of general application, including claims for refunds on account of carry-back losses. In support of that position the director quotes the title of the 1941 act: "AN ACT to amend section six thousand nine hundred forty-three, and ninety-seven thousandths (6943.097) providing for a limitation of time during which claims for refund may be allowed by the State Tax Commission."

To the contrary, taxpayers argue that initially and as thus amended, the section was confined to cases of mistakes. They

also argue that a carry-back loss is not a mistake. The director seems to agree that such a loss is not a "mistake," and so do we. The crux of the case, therefore, is whether the section is of general application or is confined to cases involving mistakes.

We think that the section began as a statute confined to mistakes, and that the 1941 amendment was insufficient to overcome the enacted title of the section as well as the plain language in the section, "as a result of mistake". Had the 1941 amendment been enacted as a separate section we might have a different case, but it was made a part of a section involving refunds and credits for mistakes. Plain language in a statute requires no construction. *Miller Oil Co. v. Abramson,* 252 Iowa 1058, 1061, 109 N.W.2d 610, 612 (1961).

The real problem comes with further additions to the section. The next pertinent amendment occurred twenty-nine years later when the General Assembly added another sentence:

Notwithstanding the period of limitation specified, the taxpayer shall have six months from the day of final disposition of any income tax controversy between the taxpayer and the internal revenue service with respect to the particular tax year or years to claim an income tax refund or credit, provided the taxpayer has notified the department of revenue of the existence of said income tax controversy within the five-year limitation period.

1970 Iowa Acts ch. 1207, § 1. The title of the 1970 act is unenlightening: "AN ACT relating to income tax." We think this act is neutral insofar as clues are concerned. The director argues that the act's words, "any income tax controversy", would include a controversy based on a mistake or not based on a mistake, and that this is some indication the 1970 General Assembly was transforming section 422.73 into a general statute of limitations. On the other hand, again we do not have the enactment of a separate Code section, but instead an amendment to a Code section whose title is "CORRECTION OF ERRORS," and whose substantive first sentence gives the right of refund or credit "as a result of mistake". Again the General Assembly left that title intact and did not delete the "mistake" language in the text. The conclusion seems reasonable that preexisting section 422.73 and the 1970 amendment to it can be read together—the Assembly intended "any income tax controversy" in the context of the rest of section 422.73. We are reluctant to find that the words "any income tax controversy" impliedly repealed the "Errors" and "mistake" language of the section amended. Implied repeals are not favored. *Northwestern Bell Telephone Co. v. Hawkeye State Telephone Co.,* 165 N.W.2d 771, 774 (Iowa 1969). We hold that with the 1970 amendment section 422.73 retained its character as a limitation on refunds and credits for mistakes.

In 1975, when the instant carry-back loss accrued, section 422.73 thus read as follows:

422.73. CORRECTION OF ERRORS. If it shall appear that, as a result of mistake, an amount of tax, penalty, or interest has been paid which was not due under the provisions of this chapter, then such amount shall be credited against any tax due, or to become due, under this chapter from the person who made the erroneous payment, or such amount shall be refunded to such person by the department. No claim for refund or credit that has not been filed with the department within five years after the tax payment upon which a refund or credit is claimed became due, or one year after such tax payment was made, whichever time is the later, shall be allowed by the director. Notwithstanding the period of limitation specified, the taxpayer shall have six months from the day of final disposition of any income tax controversy between the taxpayer and the internal revenue service with respect to the particular tax year or years to claim an income tax refund or credit, provided the taxpayer has notified the department of revenue of the existence of said income tax controversy within the five-year limitation period.

The final amendment to be considered occurred eight years after the previous one. 1978 Iowa Acts ch. 1140, § 2. While section 3 of this act makes the act effective only as to tax years ending after December 31, 1978, the director argues that the act may throw light on legislative intent respecting section 422.73 in 1975. We agree. *American Home Products v. Iowa State Board of Tax Review,* 302 N.W.2d 140, 144–45 (Iowa 1981).

The title of this amendment states: "AN ACT relating to the period of limitations during which determination of income tax due can be made and refunds can be claimed."

In accordance with present legislative practice, this amendment reenacts the provisions amended. Section 1 of the amendment is not relevant to the present inquiry; it deals in general with time limitations on the state.

Section 2 of the amendment deals with section 422.73 which is involved here, and expressly retains the title of the section, "CORRECTION OF ERRORS." The subsequent provisions of section 2, however, demonstrate for the first time that the title of the section is underinclusive. Section 2 contains two paragraphs. We may place paragraph 1 aside; it applies only to the sales and use taxes. Paragraph 2, however, is significant. It retains the words "as a result of mistake," but it expressly goes beyond mistake:

2. If it shall appear that, as a result of mistake, an amount of tax, penalty, or interest has been paid which was not due under the provision of division two (II) [personal income tax—involved here], three (III) [business tax on corporations] or five (V) [taxation of financial institutions] of this chapter, then such amount shall be credited against any tax due, or to become due, under this chapter from the person who made the erroneous payment, or such amount shall be refunded to such person by the department. A claim for refund or credit that has not been filed with the department within three years after the return upon which a refund or credit claimed became due, or within one year after the payment of the tax upon which a refund or credit is claimed was made, whichever time is the later, shall not be allowed by the director; *if, as a result of a carryback of a net operating loss or a net capital loss, the amount of tax in a prior period is reduced and an overpayment results, the claim for refund or credit of the overpayment shall be filed with the department within the three years after the return for the taxable year of the net operating loss or net capital loss became due.* Notwithstanding the period of limitation specified, the taxpayer shall have six months from the day of final disposition of any income tax *matter* between the taxpayer and the internal revenue service with respect to the particular tax year or years to claim an income tax refund or credit, provided the taxpayer has notified the department of revenue in writing no later than six months after the expiration of the three-year limitations period of the existence of such income tax matter.

(Emphasis added.)

This paragraph shortened the period for a claim for refund or credit from five to three years. Most significantly, it inserted a clause expressly dealing with carry-back losses, allowing a three-year period for refund claims from the due date of the return for the loss year. It also retained the additional six-month period for refund claims after disposition of a case by the internal revenue service, but it changed the words "any income tax controversy" to "any income tax matter"—which would apparently include loss carryback cases as well as mistake cases, pending before the internal revenue service.

Here the General Assembly has expressly brought carry-back losses under section 422.73 despite the "Errors" and "mistake" rubric of that section. The director argues this shows the General Assembly intended all along that section 422.73 was of general application and included carry-back loss refund and credit claims; otherwise the General Assembly would have covered the carry-back case in a section by itself.

We react differently to the amendment. We think that more likely the General Assembly viewed section 422.73 as a mistake statute in accordance with its title and text and believed that the carry-back cases required an express provision in order to be covered. Thus in 1978 section 422.73 became a dual purpose statute; it thereafter covered both the mistake cases and the loss carry-back cases. But prior to that time—at the time of the case before us—section 422.73 was a mistake statute.

We have similarly investigated the historical development of section 422.25, cited by the parties. That section, however, deals principally with time limitations on the state. Moreover, it is not restricted by the "mistake" language found in section 422.73. Our investigation of section 422.25 does not change our view of the scope of 422.73.

■ III. The director also contends that in the absence of statute a taxpayer cannot have a refund of taxes voluntarily paid, citing *Slimmer v. Chickasaw County,* 140 Iowa 448, 118 N.W. 799 (1908), and *Kraft v. City of Keokuk,* 14 Iowa 86 (1862); that section 422.73 is the only statute which grants a right to an income tax refund; and that if section 422.73 is inapplicable, taxpayers have no right at all to a refund.

We cannot accept this contention with respect to carry-back losses. It ascribes to the General Assembly an intention to commit an idle act. The Assembly has adopted quite elaborate provisions for carry-back losses. The only purpose of those provisions is to enable taxpayers to obtain refund of or credit for taxes paid for prior, profitable years. To hold that a taxpayer cannot have a refund or credit despite a carry-back loss statute would transform the carry-back legislation into a charade. We hold that the carry-back legislation carries with it the right of refund or credit, as the case may be. Here a credit is not involved, and a refund is in order. *See also* 1974 Iowa Acts ch. 1199, §§ 7, 11.

■ IV. Finally, the director argues that if section 422.73 is inapplicable to carry-back claims which are not covered by the later 1978 amendment, the state will be exposed to old claims ad infinitum. If this is a real danger, the General Assembly can address it by appropriate legislation. The legislature can validly extinguish existing claims by a requirement that they be presented within a reasonable, specified time or be forever barred. *Cf. Presbytery of Southeast Iowa v. Harris,* 226 N.W.2d 232 (Iowa), *cert. denied,* 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 48 (1975) (land claims).

We return the case to the director for allowance of the refund with interest.

AFFIRMED AND REMANDED.