LUZERNE NICHOLS *vs*. CITY OF MINNEAPOLIS and another.

June 9, 1885.

Municipal Corporations—Negligence—Obstruction in Streets—Knowledge of Traveller.—Previous knowledge that a street is out of repair, or obstructed, does not necessarily and conclusively establish negligence on part of a person attempting to travel it. This depends on circumstances; following *Kelly* v. *Southern Minn. Ry. Co.*, 28 Minn. 98, and *McKenzie* v. *City of Northfield*, 30 Minn. 456.

Same—Evidence of Negligence.—The fact in this case, that the municipal authorities neglected for eight days to remove dangerous obstructions from a public business street, *held* sufficient to justify the jury in finding the city guilty of negligence.

Same—Telegraph Poles in Streets—Duty of Company.—Where a telegraph or telephone company erect poles and string wires in a public street, under license from the city, it owes the duty, not only of erecting them, but also of *maintaining* them in a safe condition. If the wires fall into the street so as to obstruct or endanger travel, it is their duty to remove them. The licensees owe this duty, although the fall of the wires is the result of a cause for which they are not responsible.

Same—Fall of Wires Caused by Fire Department.—In this case the fall was caused by the weight of ice produced by water thrown upon them by the city fire department while extinguishing a fire in an adjacent building. In such a case it was the duty of the telephone company to remove the fallen wires within a reasonable time after notice.

Same—Abandonment of Property.—They could not relieve themselves of this duty by assuming to abandon their property.

Action brought by plaintiff in the district court for Hennepin county, against the city of Minneapolis and the Erie Telegraph and Telephone Company, to recover damages for personal injuries. Plaintiff had a verdict, and both defendants appeal from an order by *Koon*, J., refusing a new trial.

*Judson N. Cross*, for appellant, the city of Minneapolis.

*Campbell & Biddle*, for appellant, the Erie Telegraph and Telephone Company.

*Worrall & Jordan,* for respondent.

MITCHELL, J.   The important facts in this case are these:

The defendant company, under a license from the defendant city, erected and maintained, on and along a public street, its poles and wires for a telephone exchange system.   On the night of January 31st a fire occurred in a building fronting on this street.   While the city fire department were throwing water upon the burning building, water fell and froze upon the cross-bars to which the wires were attached, to such an extent as to break them from the poles, and to let the wires, to the number of some 40, down upon the sidewalk and street.   Portions of some of these wires became imbedded in the ice, while the remainder lay exposed and loose on top of the ice.   Immediately or soon after the fire, the company cut off the fallen wires at either end of this break, and spliced their lines over and past it.

There is some conflict in the evidence as to what the company did in the way of removing the fallen wires thus cut off from their lines; but there is evidence reasonably tending to prove that they merely reeled up and carried away some of the loose wires, but left the remainder in the street and on the sidewalk, and that of the wires thus left some were lying loose, and others partly imbedded in the ice and partly loose or curled up on top of the ice.   Some one, (who, does not appear,) after the fire, stretched a rope across the sidewalk in front of the burned building, so as to prevent travel on it; but, as before stated, these wires extended some distance into the street beyond the sidewalk.   The plaintiff occupied a livery-stable adjacent to the burned building, and was aware of the general condition of the street after the fire, and that these wires were lying there, although not aware of the existence of the particular one that caused the injury.   On the evening of February 8th, and after dusk, the plaintiff started from his place of business to go to his home, the direct route to which led him past the burned building.   On coming to the rope across the sidewalk, he passed around it into the street, and, while walking along, caught his foot in one of these wires,—the ends of which were fastened into the ice, thus forming a loop,—tripped and fell, and sustained the injury complained of.   The telephone company was made a co-defendant with the city, under the provisions of

section 18, chapter 8, of the city charter, (Sp. Laws 1881, c. 76.) A recovery having been had against them, both defendants appeal.

1. Both defendants in common urge the point that, upon the undisputed facts of the case, plaintiff was guilty of contributory negligence in attempting to travel on this part of the street with previous knowledge of its unsafe condition. On the particular facts of this case we think this was a question for the jury. Previous knowledge that a street is out of repair or obstructed, does not conclusively or necessarily establish contributory negligence on the part of a person attempting to travel it. This depends on circumstances. Although this portion of the street was thus more or less obstructed by these wires, yet it does not appear that it was in so dangerous a condition but that a man of ordinary prudence might have reasonably supposed that in the exercise of ordinary care he could travel it in safety. *Kelly* v. *Southern Minn. Ry. Co.*, 28 Minn. 98; *McKenzie* v. *City of Northfield*, 30 Minn. 456.

2. The fact that the municipal authorities had neglected for eight days to cause these obstructions to be removed from a public business street, amply justified the jury in finding the city guilty of negligence.

3. The remaining and most important question in the case is as to the liability of the telephone company. We quite agree with counsel that no new liability on part of the company to the *plaintiff* is created by section 18, chapter 8, of the city charter referred to. The only effect of this section is, where a common-law liability exists, to require the plaintiff to join the party thus liable as co-defendant with the city, although the two are not joint tort-feasors. This is for the benefit of the city.

The liability of the company rests upon another ground. It had a license from the city to string these wires over the public street. But this license was not without its burdens. It carried with it an implied obligation to erect and *maintain* these wires in a safe condition, so that they should not become nuisances, or endanger the safety of the travelling public. If any injury should arise to a traveller by reason of the improper and unsafe mode of erecting the poles or stringing the wires, the company would be liable precisely as would any person who commits a nuisance in a public highway. The same rule

would apply when, after erections are properly made, the company negligently suffers them to fall down or to be out of repair, or to remain so after reasonable notice. It was as much its duty safely to maintain as it was safely to erect. Whether the unsafe condition was or was not, in its inception, the result of a cause for which the company was responsible, is only material in determining when the negligence began, and in what it consisted. If it was the result of negligent construction, this would constitute the negligence. On the other hand, if, as in this case, the unsafe condition was the result of a cause for which the company was not at all responsible, the negligence consists, not in the fact that the wires fell into the street, but in the fact that they were allowed to remain there after reasonable notice to the company, and the lapse of sufficient time within which to remove them. The duty of the company in such a case, it seems to us, is not at all dependent upon the nature of the cause which produced the unsafe condition. So far as the duty of removing the wires from the street was concerned, it was immaterial whether their fall was the result of natural decay, of a malicious and unlawful act of some third person, of some extraordinary force of nature, or, as in this case, of the freezing of water thrown upon the cross-bars by the fire department. Nor could the company, which had placed its property on a public street, under a license from the city, relieve itself of this duty by assuming to abandon it, when, from natural wear or sudden casualty, it had ceased to be valuable for the purpose for which it had been placed there.

The implied obligation arising from the fact that the structure was placed upon the street under this license, is what, in our judgment, clearly distinguishes this case from the case suggested by counsel, where a person's property, without his authority or procurement, is carried into the street and deposited there. Whatever might be the duty of the owner in the case supposed, the two cases are not analogous. We do not suggest that it was the duty of the telephone company in this case to remove the body of ice and *debris* on the street for the purpose of removing such portions of its wire as were imbedded therein, but we think it was its duty, within a reasonable time, to remove such portions as were exposed in such a way as to endan-

ger the safety of those lawfully using the street, and that in failing to do so for eight days it was guilty of negligence. At least, the jury were justified in so finding.

. Order affirmed.