## SNEE v. CLEAR LAKE TELEPHONE CO.

Mere knowledge by a traveler of a defect in a highway is not generally conclusive evidence of his negligence in attempting to pass it; and, unless fair-minded men cannot differ as to his having acted rashly, the question whether he acted prudently is for the jury, as one may travel on a defective highway, provided the danger is not such that a prudent man would decline to encounter it, and that in doing so he exercises care commensurate with the danger.

A telephone company maintaining its wires along a public highway must maintain the same in a safe condition, so that they will not become a nuisance or endanger the safety of the traveling public; and, where an injury to a traveler arises by reason of the unsafe mode of maintaining the wires, the company is liable.

Whether a traveler on a highway, injured by coming in contact with broken telephone wires, was guilty of contributory negligence **held** for the jury, notwithstanding his knowledge of the fact that the wires were down.

Whether a telephone company maintaining wires along a public highway negligently permitted the wires to remain down in such a condition as to endanger the traveling public **held**, under the evidence, for the jury.

It is not error to refuse a charge covered by the general charge given.

In an action against a telephone company for negligently permitting its wires along a public highway to remain down so as to endanger the safety of the traveling public, an instruction that the company, if not otherwise negligent, is not responsible for damages

resulting from an unusual storm, which could not have been reasonably foreseen and its consequences guarded against, is properly refused, because it fails to apply the law stated to any issue or evidence in the case.

Where the complaint, in an action against a telephone company for injuries to a traveler on a highway coming in contact with broken wires, merely alleged that the company negligently permitted the wires along the highway to remain down after notice of their dangerous condition, the question as to what caused them to be down was immaterial.

A single man resided in a county for about 8 years with his married brother. About two months before the beginning of a term of court he went to another county, in which his parents resided, for medical treatment. After learning that he had been drawn as a juror, he returned to the county, and his name was placed in the jury box as a regular juror. For some six months after the trial he continued to reside with his brother in the county, but occasionally went to the other county, where at one time he acted as special policeman. **Held**, to justify a finding that he was a resident of the county, and competent to serve as a juror.

A finding of the trial court on the hearing of a motion for new trial is conclusive on appeal. where there is ample evidence to sustain it, notwithstanding conflicting testimony.

Civ. Code, §§ 554, 563, granting telephone companies the right to erect telephone poles and wires along highways, do not grant telephone companies the power to create public nuisances, or to interfere with the use of highways by maintaining poles and wires at any height from the surface of the ground that it desires, as it will be presumed that the Legislature had in mind the ordinary prevailing method of constructing telephone wires.

(Opinion filed, Dec. 1, 1909.)

Appeal from Circuit Court, Deuel County. Hon. GEORGE H. MARQUIS, Judge.

Action by Kate F. Snee against the Clear Lake Telephone Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*Law & Knight,* for appellant.

Where the testimony on the part of the plaintiff discloses contributory negligence as a matter of law defendant is relieved from the burden of showing such negligence and plaintiff cannot recover. Smith v. C., M. & St. P. Ry. C., 4 S. D. 7; Hoyt v. City of Hudson, 41 Wis. 105, 29 Cyc. 630. Contributory negligence is a question of law for the court where there can be no substantial controversy as to the facts, from which but one

reasonable conclusion can be drawn. 29 Cyc. 630. Under the provisions of section 554 Civil Code, and subdivision 4 of section 563, Civil Code, the defendant has an absolute right to erect and maintain its telephone lines along either or both sides of the section line road, and, when necessary, across such road. The law does not require that the wires be strung at any certain height.

*C. A. Mead* and *W. S. Glass*, for respondent.

It is not error to charge that plaintiff's right to recover is not effected by her having contributed to the injury, unless she was at fault in so doing. Wyandotte v. White, Century Digest vol. 37, 435. It is not the contributory act but the negligence that defeats a recovery. Cent. Dig. vol. 37, p. 435. In determining whether or not one is guilty of contributory negligence his acts must be measured by the actions of ordinary prudent man under the same circumstances and in the same position. It is only when but one conclusion can reasonably be drawn from conceded or undisputed facts that a question of negligence becomes purely a question of law. If from such facts reasonable men might draw different conclusions or deductions, then the question of negligence must be left to the jury. Heckman v. Evenson, 7 N. D. 173, 73 N. W. 427.

McCOY, J. In this case the plaintiff in her complaint alleges that the defendant, on and prior to the 17th day of December, 1906, owned and operated a certain telephone line extending along and upon the public highway between the city of Clear Lake and the incorporated town of Altamont, and that prior to said date the wires attached to the poles along said telephone line had broken and become detached from the poles, and lay on and across the said highway at a point near the south end of the section line between section 34 and 35, in Altamont township; and that defendant had willfully, wrongfully, and carelessly and negligently permitted the said wires to lie on and across the main traveled track of said highway for a long period, up to and including the 17th day of December, 1906, thereby obstructing the same and making it dangerous for public travel; and the plaintiff, while lawfully traveling upon said highway in a carri-

age drawn by horses, necessarily passed along and upon the main traveled track of said highway at the place aforesaid, and though the plaintiff exercised great care to avoid accident, the said buggy was caught in said wires, and thereby overturned, and the plaintiff was thrown violently to the ground and seriously bruised and injured. To this complaint the defendant answered, denying generally the allegations thereof, and affirmatively alleging contributory negligence on the part of plaintiff. A trial resulted in a verdict for plaintiff, and judgment was thereafter entered thereon. Defendant having made a motion for new trial, and the same having been overruled and denied, the defendant brings the cause to this court on appeal, alleging certain errors to have occurred on the trial, excepted to by defendant, and insufficiency of the evidence to sustain the verdict.

It appears from the evidence on part of plaintiff that she resided in Portland township, Deuel county, about four miles northeast of Altamont, and on the 17th day of December, 1906, made a trip to Clear Lake, in a buggy drawn by horses driven by her 17 year old son; that they arrived at Clear Lake about 2:30 p. m., and that on the homeward trip the same evening after dark, about 7:30, when it was snowing a very little, in passing under defendant's line of telephone wires, at a point on the highway where the main traveled track, in avoiding snow drifts, passed obliquely under said telephone line between two posts, plaintiff's team became entangled in loose and down wire; that the son got out of the buggy and disentangled the wire and lifted the same over and to one side of one horse and led the team over and around said wire, and then started walking ahead of the team to discover and avoid other wires; that plaintiff sat in the buggy while the son was so doing; that she picked up the lines, and was driving the team, and after having moved some 10 feet, the buggy axle caught on another wire and tipped over, throwing plaintiff to the ground and injuring her; that during this accident the team and buggy were at all times in the main traveled track; that the wire which overturned the buggy was fastened at the ends to the poles, and sagged in the middle down into the snow and ice on the earth; that in going to Clear

Lake in the middle of the day plaintiff had passed over the same highway and the same track, and had observed and seen the wires down, and had driven over and around and between the same as best they could; that on the homeward trip at night the wire which overturned the buggy had been changed from the position it had occupied when plaintiff went to town, evidently by other teams or vehicles having pulled the same out into the center of the highway directly over the section line, with the middle fastened in the snow and ice on the earth, and the top fastened to the top of the pole; that the highway on which this accident occurred is the direct and main traveled thoroughfare between Clear Lake and Altamont 6 miles north, and that the place of the accident was about 2½ miles north of Clear Lake; that prior to the day of the accident, fixed by witnesses from one week to a month prior thereto, a heavy sleet had fallen, which had caused sagging of the telephone wires.

It also appeared from the evidence that the mail carrier, who daily passed over this route between Altamont and Clear Lake, several days before the accident notified the secretary and manager of defendant that the wires at or near the point of this accident were down and dangerous to the traveling public. The secretary; who was also manager of defendant, denied that he had been notified, or that the defendant knew of the dangerous condition of said wire before the accident, and the testimony of defendant also tended to show that the sleet storm had not occurred more than four or five days prior to said accident, and also that there was another track on the same highway that plaintiff might have taken, instead of the one on which she was injured, but whatever conflict there was in the evidence has been resolved in favor of plaintiff by the verdict of the jury. At the close of the plaintiff's evidence, and also at the close of all the evidence, the defendant moved the court to direct a verdict in favor of defendant, on the grounds that the plaintiff has failed to establish a cause of action against the defendant; that the evidence is wholly insufficient to justify a verdict against the defendant; and for the further reason that it appears from the testimony of the plaintiff herself that she was guilty of contribu-

tory negligence in this: That about four or five hours immediately preceding the happening of the occurrence or accident in question, the plaintiff passed over the wire or wires in question, and at that time observed the fact that the wires were down, and were in a dangerous condition, and that, notwithstanding the fact that she had full knowledge of the dangerous condition of the said wires, later on, and after dark on the same day, she voluntarily chose to pursue the same route, and passed over the highway at the same point where she saw these wires down, and at a time when there was another passable road which she could have taken and have avoided these wres. The motion was overruled and denied, to which the defendant excepted, and said ruling is now assigned and urged as error. But we are of the opinion that the learned trial court was correct, and that the case was properly submitted to the jury.

"Mere knowledge, on the part of a traveler, of a defect existing in a highway, sidewalk, or bridge is not, in general, conclusive evidence of his negligence in attempting to pass it; but, except in cases where fair-minded men could not differ as to his having acted rashly, the question whether he acted prudently will be one of fact for the jury. The fact that there is a defect in a street does not oblige him to forgo traveling upon it; but he may proceed, provided the danger is not of such a character that a prudent man would decline to encounter it, and provided that in doing so he exercises a degree of care and caution commensurate with the danger. He need not, indeed, exercise extraordinary care, unless the danger is so great as to require it; but he should use a degree of care proportionate to the danger, which must be extraordinary vigilance and caution if the danger is very great, whereas no more than ordinary care and caution will suffice if the dangerous place is such as to be seemingly passable without much difficulty. Whether it was consistent with reasonable care to attempt to pass it will, except in those cases where fair-minded men would agree that the attempt was rash or negligent, be a question of fact for the jury, under all the circumstances of the case. Of course, if the traveler is familiar with the defect, he is expected to use more care in passing it than

would be required of him if he were wholly ignorant of it. The doctrine of voluntary assumption of a risk, as distinguished from contributory negligence, is generally applied in cases arising between employer and employe as to the voluntary use of a tool or appliance known to be defective, or a place of work known to be unsafe, and does not apply to the case of one passing along a highway partially obstructed—as, for example, by a railroad train projecting across it." 5 Thomp. Neg. § 6263.

And again in the case of Nichols v. City of Minneapolis and Telephone Co., 33 Minn. 430, 23 N. W. 868, 53 Am. Rep. 56, where an accumulation of ice had broken down a number of wires along a street near by the plaintiff's place of business, and where plaintiff fully knew the dangerous condition, it was held that it was a question for the jury as to whether or not plaintiff was guilty of contributory negligence, and in rendering the decision the court, by Mitchell, J., said: "Both defendants in common urge the point that, upon the undisputed facts of the case, plaintiff was guilty of contributory negligence in attempting to travel on this part of the street with previous knowledge of its unsafe condition. On the particular facts of this case we think this was a question for the jury. Previous knowledge that a street is out of repair or obstructed does not conclusively or necessarily establish contributory negligence on the part of a person attempting to travel it. This depends on circumstances. Although this portion of the street was thus more or less obstructed by these wires, yet it does not appear that it was in so dangerous a condition but that a man of ordinary prudence might have reasonably supposed that in the exercise of ordinary care, he could travel it in safety. The liablity of the company rests upon another ground. It had a license from the city to string these wires over the public street. But this license was not without its burdens. It carried with it an implied obligation to erect and maintain these wires in a safe condition, so that they should not become a nuisance, or endanger the safety of the traveling public. If any injury should arise to a traveler by reason of the improper and unsafe mode of erecting the poles or stringing the wires, the company would be liable precisely

as would any person who commits a nuisance in a public highway: The same rule would apply when, after erections are properly made, the company negligently suffers them to fall down or to be out of repair, or to remain so after reasonable notice. It was as much its duty safely to maintain as it was safely to erect. Whether the unsafe condition was or was not, in its inception, the result of a cause for which the company was responsible is only material in determining when the negligence began, and in what it consisted. If it was the result of negligent construction, this would constitute the negligence. On the other hand, if, as in this case, the unsafe condition was the result of a cause for which the company was not at all responsible, the negligence consists, not in the fact that the wires fell in the street, but in the fact that they were allowed to remain there after reasonable notice to the company, and the lapse of sufficient time within which to remove them. The duty of the company in such a case, it seems to us, is not at all dependent upon the nature of the cause which produced the unsafe condition." Also in this connection see Smith v. Yankton 23 S. D. 352, 121 N. W. 848. Under the particular facts and circumstances of this case the question whether or not plaintiff was negligent in permitting the said wires to remain down after notice of their dangerous condition, and whether or not plaintiff acted prudently or rashly in attempting to go through said road in the nighttime, were all questions of fact for the jury, and about which different reasonable minds might differ. This also disposes of the question as to the sufficiency of the evidence to sustain the verdict.

The trial court refused to give the following instruction, requested by defendant, and to which ruling the defendant excepted: "You are instructed that the defendant, if not otherwise negligent, cannot be held responsible for damages resulting from a great and unusual storm which could not have been reasonably foreseen and its consequences guarded against." We are of the opinion that this instruction was properly refused, because the same, in substance, is covered by the general charge given by the court; and, besides, this requested instruction is incomplete

and indefinite, and while it correctly states a bare and abstract proposition of law, it is not applied by apt instructive words to any issue or evidence in the case. The allegation of the complaint is that defendant negligently permitted the wires to remain down after notice of their dangerous condition. What caused them to be down is not alleged as negligence, and is therefore immaterial. Nichols v. Minneapolis, supra.

It is contended by defendant that, because it was discovered after the trial that one of the jurors was not a resident of Deuel county at the time of the trial, there has been a mistrial, and that a new trial should be granted by reason thereof; but we are of the opinion that this contention is untenable under the facts presented. It appears that this juror was a single man, regularly drawn as a juror; that prior to the term of court at which this case was tried he had been a resident of Deuel county for some 8 years, but that some two months before the beginning of the term of the court he had gone to the city of Watertown in Codington county for medical treatment, and after he had learned that he had been drawn as a juror, he returned to Deuel county, and his name was placed in the jury box as one of the regular jurors. There seems to have been some conflict in the affidavits as to whether this juror was a resident of Deuel county. While in Deuel county, it appears that this juror for some 8 years had made his home with a married brother, at the town of Bemis, and his parents resided at Watertown; that for some six months after the trial of this case, he still continued to reside with his brother at Bemis, but occasionally going to Watertown, where at one time he acted as special policeman. But the trial court has determined this conflict in favor of plaintiff, and as there is ample evidence to sustain such finding, this court is bound by such decision as it is not within the province of this court to determine such conflicts of testimony.

Counsel for plaintiff, in his address to the jury, it is contended, made remarks to the jury not warranted by the evidence; and, while we are of the opinion that such remarks were outside the record, still it does not appear that the same were repeated

after objection made, and we are of the opinion that the same were not so prejudicial as to constitute reversible error.

The defendant further contends that under the provisions of sections 554 and 563, Civ. Code, it is granted the absolute right to erect and maintain telephone poles and wires along either or both sides of a section line road, at any height from the surface of the ground that it desires, and that it might, if it so desired, string its wires so close to the ground that the traveling public could not pass under the same, excepting at highway crossings, and that the traveling public would have no right to pass under such wires on the public highway, excepting at road crossings, and that the public would have no right to complain even if the wires were down and permitted to so remain, and for that reason defendant was acting within its lawful right, and which should prevent a recovery by plaintiff in this action; but we are of the opinion that this position is not tenable. The Legislature in enacting said section 554 and 563 never intended any such construction of telephone lines, or any such situation of affairs. The Legislature evidently had in mind the usual and ordinary prevailing methods and customs for the construction of such lines, and could not have intended, by said sections of the statute, to grant power to create public nuisances, or to interfere with the use of highways to the extent suggested by appellant's contention. Imagine a very frequently traveled highway, in a thickly settled community, 6 or more miles long, with both sides occupied by telephone lines, with wires strung lengthwise from the ground up to the top of 29-foot poles, except at crossings, with only sufficient room in the middle for teams to pass, where the drivers of fractious teams were likely to pass several automobiles on a single trip, or suppose a runaway team came along. Under such circumstances the full 66-feet width of the road is none too wide. Such a proposition would amount to practical confiscation, to almost total exclusion from the benefits of the road. This would be within the possiblities of defendant's position. Again, how would an adjacant landowner, who happened to live halfway between the crossroads, get out upon the highway, and what would prevent the telephone company from completely

fencing him in, so that he could not get into the highway at all? It seems to be generally held that the traveler is entitled to the use of any and every part of the whole of the highway, and should not be fenced off by telephone or other wires and confined to a narrow strip of traveled way in the center of the high-, way, barely sufficient for teams to pass. Such telephone lines should be so constructed and erected as not to constitute a public nuisance, and so as not to interfere with any kind of ordinary use of the highway, and so as not to be dangerous to the traveling public.

Finding no error in the record, the judgment and order denying a new trial are affirmed.