Hazel SCHWENTKER, Special Administratrix of the Estate of Oliver Homer Schwentker, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 67–7W.

United States District Court
D. South Dakota, W. D.

Aug. 25, 1969.

Bottum & Beal, Rapid City, S. D., for plaintiff.

William F. Clayton, U. S. Atty., Sioux Falls, S. D., for the Government.

MEMORANDUM DECISION

BECK, District Judge.

This is a wrongful death action by the special administratrix of the estate of Oliver Homer Schwentker, deceased, un-

der this state's Wrongful Death Statute [1], with jurisdiction in this court and authority for it grounded on the Federal Tort Claims Act, § 1346(b) [2] and § 2674 [3].

It is premised on the theory that her husband's fall, December 3, 1966, on the Rapid City post office floor, inside the west-side exit door, the injuries thereby sustained and his death six days later, amounted to negligence on the part of the defendant, its agents, employees and servants and such misconduct the proximate cause.

The fall came about, as the court finds, when Schwentker at 11:00 A.M. or thereabouts, in leaving the building and reaching for the door handle on the west door, (Plf. Ex. 2), slipped in a water filled spot on the floor with both of his feet going out from under him to his left and he striking his head against the radiator at the point of the circled part shown on that exhibit.

The condition of the lobby floor just before the fall, as the court finds, is in the summed up descriptions from the witnesses that it was "wet, very wet", "slippery", "not too clean", covering, that of snow, "slush and mud", water in the worn-down areas of the granite veneer floor—not repaired since 1961, "treacherous" to the point of making you walk as if you are on "needles and pins", general appearance that of neglect—postmaster not too familiar with the operations, he running a beer parlor and a poolroom for himself down main street—and the lobby as a whole depicting a scene "messy", with lots of tracks and mud."

Other material elements in the factual area, also as the court finds, are not only in the management's indifference to conditions which generally give rise to accidents but specifically in its total suspension that day of its own rules that mopping and clearing *was a part of its self-imposed regulations for every day and during days of inclement weather several times.* (Plf. Exs. 2 & 19, Tr. 11 [4].)

1. SDC 1960 Supp. 37.2203, as amended by Chapter 235 of the 1963 Session Laws of the State of South Dakota: " * * * Every action for wrongful death shall be for the exclusive benefit of the wife * * *; and it shall be brought in the name of the * * * special administrator of the deceased person; and in every such action the jury may give such damages not exceeding in any case thirty thousand dollars as they may think proportionate to all injury resulting from such *death to the persons respectively* for whose benefit such action shall be brought." 28 U.S.C.A. § 2402, on the other hand, provides for such a case to be tried to the court. This is controlling.

2. " * * * the district courts, * * * shall have exclusive jurisdiction of civil actions on claims against the United States * * * for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

3. "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.", and "If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof."

4. "Q. Do you know approximately how many times per day that the lobby floor is mopped?
A. That depends on the weather conditions.
Q. Well, ordinarily how many times a day is it mopped, sir?
A. The janitors' or custodian's schedule calls for it to be cleaned and mopped every evening. Many times in inclement weather it's mopped several times."

Other hazards arising out of that suspension are the following ones: (1) water accumulations in the worn-down spots inside the west exit, none easily discernible (Plf. Exs. 1 & 5), and (2) that situation being one as to which the court finds Schwentker had no knowledge.

This case in many respects is controlled by the rule in Orrison v. City of Rapid City, 76 S.D. 145, 74 N.W.2d 489 (1956), particularly as the court in that case emphasized degrees of care and safety required from a governmental agency serving the public, and in that connection and after noting that, " * * * The defendant city is not an insurer of the safety of the patrons using the dressing room."

" * * * it was the duty", however, "of the city to use reasonable care to maintain the floor in the girls' dressing room in a reasonably safe condition for the patrons using that room for the purposes for which that room is ordinarily used. Jensen v. Juul, supra, [66 S.D. 1, 278 N.W. 6, 115 A.L.R. 1280]. This duty includes the duty of reasonable and ordinary care against foreseeable dangers. McQuillin Municipal Corporations, 3rd Ed., Vol. 19, § 54.13. Caldwell v. Village of Island Park, 304 N.Y. 268, 107 N.E.2d 441; Smith v. City of Yankton, 23 S.D. 352, 121 N.W. 848; Braatz v. City of Fargo, 19 N.D. 538, 125 N.W. 1042, 27 L.R.A.,N.S., 1169; 65 C.J.S., Negligence § 5(c) (2) (a). If the dangerous condition that caused plaintiff's injury was reasonably foreseeable the city would be negligent if it did not use reasonable care to provide against it. What degree of care is reasonable necessarily depends upon the attendant circumstances. Under the circumstances disclosed by the evidence these were matters for the jury to determine." (In this case for the court).

Other observations by the court in that case on that point are likewise guidelines in this case:

"Plaintiff was in a place provided for those using the pool. She had a right to be there and was using it for the purposes for which it had been provided. Her use was in a manner that was proper and expected. There was an implied representation that the place was reasonably safe. Jensen v. Juul, supra. She was not bound, at her peril, to keep her eyes constantly on the floor. She had a right to believe that the floor was in a reasonably safe condition and to act with reasonable prudence upon that belief. Hermandson v. City of Canton, 60 S.D. 367, 244 N.W. 525. The city argues that she acquired knowledge of the dangerous condition when she stepped on the small piece of glass with her left foot and that such knowledge bars recovery. We are unable to agree. 'It is not the knowledge of a defect on the part of the person injured that precludes his recovery but his want of the care a prudent man would exercise in view of the danger.' McQuillin Municipal Corporations, 3rd Ed., Vol. 19, § 54.124, p. 465; Snee v. Clear Lake Telephone Co., 24 S.D. 361, 123 N.W. 729. See also West v. Hanley, 73 S.D. 540, 45 N.W.2d 455. Under these circumstances we believe the question of her contributory negligence was for the jury."

Impressive authority on the care required from governmental agencies, having as in this case monopolistic control of certain activities, are in the comment at page 221 of Restatement of the Law, Torts 2d, § 343A:

"In determining whether the possessor of land should expert harm to invitees notwithstanding the known or obvious character of the danger, the fact that promises have been held open to the visitor, and that he has been invited to use them, is always a factor to be considered, as offering some assurance to the invitee that the place has been prepared for his reception and that reasonable care has been used to make it safe. There is, however, a special reason for the possessor to anticipate harm where the possessor is a public utility, which has undertaken to render services to members of the public, so

that they are entitled to demand the use of its facilities, and to expect reasonable safety while using them. The same is true of the government, or a government agency, which maintains land upon which the public are invited and entitled to enter as a matter of public right. Such defendants may reasonably expect the public, in the course of the entry and use to which they are entitled, to proceed to encounter some known or obvious dangers which are not unduly extreme, rather than to forego the right."

and another one in § 343 at page 217 that:

"An invitee is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein. Therefore an invitee is not required to be on the alert to discover defects which, if he were a mere licensee, entitled to expect nothing but notice of known defects, he might be negligent in not discovering. This is of importance in determining whether the visitor is or is not guilty of contributory negligence in failing to discover a defect, as well as in determining whether the defect is one which the possessor should believe that his visitor would not discover, and as to which, therefore, he must use reasonable care to warn the visitor."

Proceeding to the issues thus having been posed, the court holds contributory negligence and the alluded to but not seriously pressed defense of assumption of risk not to have been established, leaving the defendant's negligence as the only remaining major issue for final determination.

On it the court finds facts sufficient to show the defendant's acts to have been the proximate cause of the accident and its negligence such as to sustain the plaintiff's case, and the reasons: (1) condition of the lobby such as it has been described, (2) maintenance generally far below accepted and approved of post office standards, (3) indifference on the part of the postmaster to the point where he didn't supervise the janitor work or control the crew, and (4) total suspension of all services which under self-imposed rules were imperative and should have been rendered before the accident on the third, particularly those referred too in plaintiff's Exhibit 7, p. 2k, which are as follows:

"Accidents do not just happen. They are the result of inadequate precautions. Extreme care should be exercised at all times to prevent accidents which may result in injury to the worker, fellow employees, or to the public. The following are some of the precautions which must be taken in the performance of the job and the handling of equipment and materials.

a. * * *

b. During rainy or snowy weather, give repeated attention to mopping up water tracked into entrances and lobbies. Place "Wet Floor" signs (C–1800) at entrances. Place Matting or other nonslip material in vestibules, lobbies, and employee entrances to remove slip hazards. After matting has been laid down inspect all edges for curling. Immediately trim off the curled or rolled portions that do not lie flat on the floor to prevent persons from tripping and falling. * * * ".

Norris v. Chicago, M. St. P. & P. R. Co., 74 S.D. 271, 51 N.W.2d 792 (1952), Ewing v. United States, 231 F.Supp. 1001 (S.D.1964) and other cases cited by the government and as having bearing on the question of the care which should have been exercised by Schwentker under the facts, are not in point.

The court accepts the stipulations entered into at the trial fixing Schwentker's life expectancy at 9.4 years, his annual average income during that period on the basis of accepted earning accrual tables at $28,432, expenses of last illness and funeral at $2545, totaling $30,977,

**522**

with the amount hereby under the Wrongful Death Statute fixed at $30,000.

This decision will be regarded as the court's findings of fact and conclusions of law.

Accordingly, a judgment for the plaintiff forthwith to be prepared by counsel for the plaintiff for $30,000 with costs to be taxed by the clerk as provided for by law.