(77 N. W. Rep. 93.)

---

ESTHER M. CAMERON *vs.* GREAT NORTHERN RAILWAY COMPANY.

Opinion filed November 11, 1898.

**Trial—Motion to Dismiss.**

> A motion to dismiss, made at the close of plaintiff's evidence, is tantamount to a demurrer to the evidence, and in such cases everything which the jury might reasonably infer from the evidence is to be considered as admitted. In the light of this established rule of practice, *held,* under the evidence, that it was error to withdraw this case from the consideration of the jury.

**Employers Liability—Defective Appliances.**

> Employers are bound to furnish reasonably safe and adequate machinery and appliances for the use of their employes; and if the employer negligently fails in the performance of this duty, and the employe is injured thereby while in the exercise of due care, the master will be liable; and when such machinery, etc., is safe and adequate when furnished, the employer is bound to exercise due care in keeping it safe, and to this end seasonable inspection and repairs thereof are required of the employer. Under the evidence in this case, *held,* that whether these duties have been performed by the

defendant, with respect to the decedent, was a question of fact for the jury.

### Assumption of Risk Question of Fact.

*Held*, further, that the question of whether the decedent, as an employe of defendant, assumed the risk involved in taking charge of the train in question, in the condition it was then in, was a question of fact for the jury, under the evidence.

### Proximate Cause—Negligence.

*Held*, further, under the evidence, that it was a question for the jury to determine whether the defendant was guilty of the negligence charged in the complaint, and also whether such negligence, if shown to exist, was the proximate cause of the injury complained of.

### Contributory Negligence Jury Question.

*Held*, further, in view of the evidence, that the question of whether any negligence of the deceased contributed to his death was a question of fact for the jury.

### Presumption as to Care.

*Held*, in deference to the instinct of self-preservation, that, in a case where there is no eyewitness of an accident resulting in death, a person who has suffered death by a railroad accident will be presumed to have been in the exercise of due care at the time, until the contrary is made to appear by evidence.

### Appealable Orders.

At the close of plaintiff's evidence, the trial court, on motion of defendant's counsel, made an order dismissing the action for failure of proof. Plaintiff served notice of appeal from said order. *Held*, on motion to dismiss the appeal, made in this Court, that said order was neither a judgment nor an appealable order, and, hence, that the attempted appeal from such order was abortive.

### Judgment Irregularly Entered—Effect.

Such order was entered, without any change of its form or terms, in the judgment book of the clerk of the District Court. The order concluded as follows: "The plaintiff's action is hereby dismissed. Done in open Court this 8th day of December, 1897." *Held*, in view of the explicit language of the order dismissing the action, that while the same, considered as a judgment, is irregular and highly improper in form, it nevertheless embodies the final judicial determination of the action made by the trial court, and, being duly entered in the judgment book, is sufficient, in substance, as a judgment.

Appeal from District Court, Grand Forks County; *Glaspell*, J. Action by Esther M. Cameron against the Great Northern Railway Company. Judgment for defendant. Plaintiff appeals.

Reversed.

*Bosard & Bosard,* for appellant.

It is the duty of the master not to expose his servant to extraordinary danger by putting him to work in dangerous places, or with dangerous appliances or machinery. 2 Thomp. on Neg. 972; Wood's Master and Servant, 329; Deerings Neg. 198; *Russell* v.

*Mfg. Co.,* 77 Am. Dec. 212; *Hough* v. *Ry. Co.,* 100 U. S. 217. The master is bound to use reasonable care to keep his machinery in safe and serviceable condition, and to make seasonable inspection of its condition. *Chicago, etc., Ry. Co.* v. *Jackson,* 55 Ill. 492; *Chicago, etc., Ry. Co.* v. *Bragionier,* 11 Ill. App. 516; *Bram* v. *Ry. Co.,* 53 Ia. 395; S. C. 36 Am. Rep. 243; *Atchison Ry. Co.* v.*Holt,* 29 Kan. 149; *Cincinnati, etc., Ry. Co.* v. *McMullen,* 117 Ind. 439; *N. P. Ry. Co.* v. *Herbert,* 116 U. S. 642; *Morton* v. *Detroit Ry. Co.,* 46 N. W. Rep. 111; *Grannis* v. *Ry. Co.,* 46 N. W. Rep. 1067; *Sheedy* v. *Ry. Co.,* 37 N. W. Rep. 60; *Gates* v. *Ry. Co.,* 57 N. W. Rep. 200. The deceased may have known of the broken car step, and yet the various duties occupying his attention so have occupied his mind, that he momentarily forgot it. This is not such negligence as would bar a recovery. *Fiero* v. *Ry. Co.,* 24 N. Y. Supp. 805. It is not contributory negligence for an employe to remain in service of railroad company coupling cars over open frog after knowing that a safety block would remove its peril. *Seley* v. *Ry. Co.,* 23 Pac. Rep. 751; *Pullman Car Co.* v. *Lack,* 3 N. E. Rep. 285; *Martin* v. *Ry. Co.,* 29 Pac. Rep. 645; *Kansas City, etc., Ry. Co.* v. *Flynn,* 18 A. & E. Ry. Cas. 23; *Keen* v. *Ry. Co.,* 128 U. S. 91; 2 Thomp. Neg. 1070; *Parker* v. *Ry. Co.,* 6 A. & E. Ry. Cases 731. The question of contributory negligence was for the jury. *Highland* v. *Ry. Co.,* 5 A. & E. Ry. Cases 719; *Wright* v. *Ry. Co.,* 5 A. & E. Ry. Cases 560; 2 Jaggard on Torts 1073; *Simonds* v. *City,* 67 N. W. Rep. 40. Mere knowledge of the defect did not charge Cameron with assumption of the risk. *Mahoney* v. *Dore,* 30 N. E. Rep. 366; *Cook* v. *Ry. Co.,* 34 Minn. 45; *Russell* v. *Ry. Co.,* 32 Minn. 233. The law presumes that a person who has suffered death by railroad accident, was at the time of the accident in the exercise of due care. *Kansas City, etc., Ry. Co.,* v. *Flynn,* 18 Am. & Eng. Ry Cases 23; *Adams* v. *Co.,* 41 Am. & Eng. Ry. Cases 414. There is no presumption that Cameron had notice of defective condition of car, because it might have been discovered by inspection. *Cincinnati, etc., Ry. Co.* v. *McMullen,* 117 Ind. 439. Where the evidence conflicts or is capable of different interpretations it is the jury's province to pass upon it. *Belton* v. *Baxter,* 58 N. Y. 411; *Hart* v. *Hudson, etc., Co.,* 80 N. Y. 622; *Connor* v. *Ry. Co.,* 4 N. E. Rep. 441; *Cleveland Ry. Co.* v. *Crawford,* 24 Ohio St. 631; *Robertson* v. *Ry. Co.,* 35 N. E. Rep. 775; *Emery* v. *Ry. Co.,* 9 S. E. Rep. 139; *Spaulding* v. *Ry. Co.,* 67 N. W. Rep. 227; *Rolseth* v. *Smith,* 35 N. W. Rep. 565; *Creamy* v. *Long Island R. Co.,* 5 N. E. Rep. 425; *Kellogg* v. *Ry. Co.,* 79 N. Y. 72; *Lee* v. *Gas Co.,* 98 N. Y. 115; *Sturry* v. *Ry. Co.,* 10 N. E. Rep. 128; *Whittaker* v. *Canal Co.,* 27 N. E. Rep. 1042; *Galvin* v. *Mayer,* 19 N. E. Rep. 675. Contributory negligence is seldom a question of law. *O'Brien* v. *McGlinchy,* 68 Me. 552; *Brown* v. *Ry. Co.,* 58 Me. 384; *Sleeper* v. *Ry. Co.,* 58 N. H. 520; *Elwell* v. *Hacker,* 30 Atl. Rep. 64; *Nugent* v. *Ry. Co.,* 12 Atl. Rep. 797. It was error in this case for

the Court to direct verdict for defendant, there being no eye witness to the accident and no affirmative evidence of negligence on the part of deceased. *Galvin* v. *Mayor,* 19 N. E. Rep. 675; *Rolseth* v. *Smith,* 35 N. W. Rep. 565. Where the proof is not convincing, and the question of contributory negligence is one which must be arrived at from inference concerning which reasonable men may honestly differ the question is for the jury. *Richmond, etc., Ry. Co.* v. *Powers,* 149 U. S. 443; *Omaha Street Ry. Co.,* v. *Martin,* 66 N. W.Rep. 1007; *Russell* v. *Dillworth,* 2 Atl. Rep. 355; *Baltimore, etc., Ry. Co.* v. *Meyers,* 62 Fed Rep. 367; *N. P. Ry. Co.* v. *Austin,* 64 Fed. Rep. 211; *Kellogg* v. *Ry. Co.,* 79 N. Y. 76; *Hanks* v. *Ry. Co.,* 18 N. E. Rep. 218.

*W. E. Dodge* and *Burke Corbet,* for respondent.

There was no judgment entered below from which an appeal could be taken, and no appeal was attempted from the order of dismissal. Sec. 5479 Rev. Codes; Secs. 5480, 5488, subd. 2, § 5489, Rev. Codes. A final judgment is without force until entered in the judgment book. In re Weber, 4 N. D. 119, 59 N. W. Rep. 523; *Locke* v. *Hubbard,* 9 S. D. 364, 69 N. W. Rep. 588. It may fairly be presumed that a servant knows the condition of machinery and appliances which he has constant opportunity to inspect and which his regular duties bring under his notice. 1 Shear. & R. on Neg. 216; *Railroad Co.* v. *Marker,* 41 Ark. 542; *Sheets* v. *Sheldon,* 103 N. Y. 667; *Brossman* v. *Ry. Co.,* 113 Pa. St. 490; *Houston Ry. Co.* v. *McNamara,* 59 Tex. 255. The evidence does not disclose to what cause death is attributable. If it is as reasonable to believe that the accident happened as the result of some other cause than that assigned there can be no recovery. The question cannot be left to conjecture. *Philadelphia, etc., Ry. Co.* v. *Schertle,* 2 Am. & Eng. R. Cases 158; *Orth* v. *Ry. Co.,* 47 Minn. 384; Bailey's Master's Liability 503, 508; *Koslowski* v. *Thayer,* 66 Minn. 150; *Moore* v. *Ry. Co.,* 67 Minn. 396. When liability depends upon carelessness or fault of a person or his agents, the right of recovery depends upon the same being clearly shown by competent evidence. *Sorenson* v. *Menasha P. & P. Co.,* 56 Wis. 338, 14 N. W. Rep. 446. The duty of plaintiff's intestate, a conductor of experience, was to inspect the train and the conditions relative to the removal of the steps. Forwarding the car to the end of his run was not unusual or hazardous employment, such hazard and risk he accepted with his employment. *Puffer* v., *Ry. Co.,* 68 N. W. Rep. 39; *Clark* v. *Ry. Co.,* 28 Minn. 128; *Kelly* v. *Ry. Co.,* 35 Ill. 106; *Gibson* v. *Ry. Co.,* 63 N. Y. 449; *Haden* v. *Mfg. Co.,* 29 Conn. 548; *Devitt* v. *Ry. Co.,* 50 Mo. 302; *Baylor* v. *Ry. Co.,* 40 N. J. L. 23; Woods Master and Servant 680, 718; Patterson Ry. Accdt. Law 344.

WALLIN, J. This action is brought by the widow of Edward James Cameron to recover damages for the alleged negligence of the defendant in causing the death of the said Cameron. The

action was tried to a jury, and at the close of the plaintiff's evidence the case was withdrawn from the consideration of the jury, and the action dismissed. This ruling is assigned as error in this Court, and the only question that need be determined here is whether such ruling was error.

There is little dispute in the evidence as to the existence of the determining facts of the case. The record shows that the decedent was at the time of his death a passenger train conductor in defendant's employ; that on the 17th day of November, 1894, he was killed by falling or being thrown from the passenger train. of the defendant then in his charge as conductor; that such accident occurred in the county of Grand Forks, N. D., about midway between the station of Arvilla and the next station, situated about seven miles east of Arvilla, and named "Emerado." The train was east bound, and was the regular Pacific passenger train, consisting of nine cars, and running between Seattle, Wash., and St. Paul, Minn. The accident occurred between 6:43 and 6:52 p. m., and at a time when the train was running at a high rate ·of speed. The train reached Grand Forks at 7:25 p. m., and there the conductor was missed; and, on being searched for, his body was found at the place above indicated. The evidence shows that the right shoulder of the deceased was crushed down, and one of his arms broken. His skull was also broken. A physician testified that death resulted immediately, or almost immediately, as a consequence of said injuries. The deceased had taken charge of the train at Minot, N. D. It appears that the deceased was seen alive just after the train passed Arvilla; and there is evidence tending to show that a ·very few minutes before the accident the deceased was seen in the rear sleeper, the last car of the train, ·passing through the car towards the rear end of the car, but no witness testifies to having seen him pass out of the back door of the car and onto the rear platform at that time, or at all that day. It appears that the train in question, while backing into the station at Great Falls, Mont., met with an accident whereby the steps leading to the platform were broken, which steps were located at the rear end, and on the left and north side, of the last car in the train, which car was a sleeper, and was the same car on which the deceased, so far as shown by the evidence, was last seen alive. The rear platform of this sleeper was about five feet wide across the car, and about three feet the other way. Counsel, in discussing the case in this Court, have assumed that the rear end of a platform on the last car of a passenger train is supposed to be guarded by a chain, which is so made that it can be fastened and unfastened; but the evidence in this case fails to show whether there was or was not such a chain on this car. After the steps had been broken, and before the train left Great Falls, Mont., the broken steps were removed by the employes of the defendant, and the bolts which fastened the steps were laid on the rear platform of the sleeper; and the car came east in the train, and continued to be the rear

car, and said steps were absent and not on the car at any time until after it reached Grand Forks, N. D. The evidence fails to disclose whether the defendant has a car shop or other facilities for the repair of its cars at any point on its line between Great Falls, Mont., and Grand Forks, N. D.; but the evidence tends to show that similar accidents to car steps had occurred with some frequency in the mountains between Seattle, Wash., and Helena, Mont., during the years 1893 and 1894, and that, when steps were so broken and removed at any point between the Pacific Coast and St. Paul, it was not the custom of defendant to take out the car for repairs while in transit. It is claimed that the deceased, having been in defendant's employ for some years prior to the accident, is chargeable with knowledge of this custom of the defendant in this particular, and voluntarily assumed any risk which such custom involved. Reverting to the rear platform in question, it appears that there was an iron gate, some 3½ feet high, which, when closed, shut in the platform on the sides, and prevented ingress or egress to the sleeper by way of the steps leading to the platform. These gates swing from the car to the railing,—swing out to close, and in to open. The hinge makes the fastening for the gate. There is one hinge on the gate, and one on the car, and also another hinge halfway between. As the gate closes, the hinge straightens out, and as it is opened the hinge closes at an angle; and it is not possible, without raising the hinge, to open the gate. But it appears that these gates may, when fastened, be opened by applying the hands to the gate, and are ordinarily so opened and shut. The gates, when closed, are inside the steps, so that a person on the platform could not pass down the steps without first opening a gate. A passenger from Helena, who occupied the rear sleeper, testified that he was on the rear platform between 3 and 4 o'clock in the afternoon of the day of the accident, and while there noticed the absence of the car steps, and also that the gates were at that time closed. This passenger found the back door of the car unlocked when he pased out upon the rear platform. This witness was on this car, and heard the noise caused by breaking the steps, and learned while at Great Falls that the steps were broken. It is not claimed that the gate on the north side of the rear platform was, after the steps were removed, securely fastened, so as to wholly prevent its being used or opened while in transit to St. Paul. The theory of the complaint is that after the steps were removed the car was defective, inadequate, and unsafe as a car, to the knowledge of the defendant, and might have been made safe by the defendant by the use of ordinary care, viz. by securely fastening the north gate on said rear platform, which gate, the complaint alleges, "could have easily and conveniently been rended safe, which fact was well known to the defendant, but the defendant neglected to cause said gate to be closed and fastened." The complaint avers

N. D. R.—9.

that the deceased was unaware of the unsafe and defective condition of the car, and that while he was in the discharge of his duties as conductor of said train, and by reason of the alleged unsafe and defective· condition of said car, and without negligence or fault on his part, he was cast upon the ground, and there killed. The body of the decedent was found on the north side of the track of the railroad, and in the ditch. Several articles belonging to him, including his lantern, ticket punch, certain change and pocket pieces, were also found near the body. These articles were scattered along the ground, west of the body, for a distance of 10 or 15 feet therefrom, and all of the same were found on the north side of the railroad track. The ticket punch was found some 4 or 5 feet north of the track. There was no eyewitness of the accident, and no witness attempts to testify directly as to how the deceased fell or was thrown from the train.

In this state of the evidence, counsel for the appellant insists that it was error to take the case from the jury. In disposing of this assignment of error, it is well settled that conflicts in the evidence, upon material points must be disregarded, and the whole evidence is to be construed most favorably to the party against whom the ruling is made. The defendant's motion to dismiss was, in effect, a demurrer to the plaintiff's evidence, and upon such demurrer the Supreme Court of the United States declares the rule as follows: "On a demurrer to evidence the Court is substituted in place of the jury as judges of the facts, and everything which the jury might reasonably infer from the evidence is to be considered as admitted." *Bank* v. *Smith*, 11 Wheat. 171. This Court has had frequent occasion to apply this well-settled rule of practice, and has often emphasized the importance of exercising great caution in taking a case from the jury. See *McRea* v. *Bank*, 6 N. D. 353, 70 N. W. Rep. 813; *Vickery* v. *Burton*, 6 N. D. 253, 69 N. W. Rep. 193. The test is whether there is any competent evidence in the case reasonably tending to sustain the cause of action alleged; and, if the evidence is such that intelligent men may fairly differ in their conclusions thereon upon any of the essential facts of the case, it is error to withdraw the evidence from the consideration of the jury. This case must be governed by this rule.

It is well settled that the master must furnish the servant with reasonably safe and suitable machinery and appliances, and if the master fails in this duty, and the servant is injured thereby while in the exercise of due care, the master will be liable for such injury. The master is bound to observe all the care which prudence and the exigency of the situation require, with respect to furnishing instrumentalities adequately safe for the use of the servant, and, when such instrumentalities are furnished, the master is required, further, to exercise due care in keeping the same safe and serviceable; and, with this end in view, the master is bound to make seasonable inspection of the condition of the instrumentalities furnished for the use of the servant. These rules are familiar, and are

so frequently reiterated by the Courts that authority in their support is unnecessary; but see 2 Thomp. Neg. p. 972; Wood, Mast. & S. § 329; *Brann* v. *Railroad Co.*, 53 Ia. 595, 6 N. W. Rep. 5; *Railroad Co.* v. *Herbert*, 116 U. S. 642, 6 Sup Ct. 590; *Railroad Co.* v. *Jackson*, 55 Ill. 492; *Hough* v. *Railroad Co.*, 100 U. S. 213; *Buzzell* v. *Mfg. Co.*, 77 Am. Dec. 212, and notes at end of the case. These authorities show also that the deceased was not a fellow servant with other servants in the defendant's employ, whose duty it was to provide and inspect the cars furnished for the use of conductors, in the sense that the defendant would not be liable for the neglect of such other servants in furnishing adequate cars and appliances to the deceased for use in the defendant's railroad operations.

In the light of these authorities, the inquiry is presented whether the rear sleeper in question, with the steps thereof removed as before explained, was, when delivered to the deceased, in Minot, in a safe condition, and especially was it a safe and adequate instrumentality, with reference to its use by the deceased as a train conductor. In view of the fact that the evidence fails to show that the defendant had facilities for repairing its cars broken in transit elsewhere than at the termini of its line, St. Paul and Seattle, we should be inclined to hold that it was not negligence on defendant's part to send the sleeper in question to St. Paul, as a part of the train to which it was attached when broken. But the ulterior inquiry is whether, after the defective condition of the car became known to the defendant, and the defendant's employes had detached the steps as they did at Great Falls, Mont., it was an act of negligence to deliver the car to the deceased in its broken condition, without first securing the gate on the north side of the rear platform in such a manner as to wholly prevent the egress of persons within the sleeper through said gate. This could have been easily and quickly accomplished by the defendant's employes who removed the steps. It was not done, and we are of the opinion that it was a question of fact whether the omission constituted an act of negligence on defendant's part.

But counsel for the respondent further contends—and this most strenuously—that, if defendant's negligence be conceded, the evidence in the case fails to show that the death of the decedent resulted from such negligence. In other words, counsel claims that the negligence complained of does not appear to have been the proximate cause of the injury alleged, in this: that the evidence, as counsel claims, does not show that the deceased was killed by falling through the opening made by removing the steps leading to the platform in question. Upon this point we quote from the brief of the respondent's counsel: "No reason is assigned or shown by the evidence for his visiting that platform, and, having once reached it, he may have been engaged in reaching under the end of the platform to adjust the air valves. He may have fallen or been thrown off the rear end of the platform, either over or under the

chain guard, or, in the absence of a chain guard, may have been cast from the platform by tramps engaged in stealing a ride, or may have deliberately reached over, unfastened the gate, opened it, and stepped out upon the tracks. The evidence does not disclose to which of these causes his death was attributable, and the rule is well settled that, if it is as reasonable to believe that the accident may have happened as the result of some other cause than that assigned, there can be no recovery. The question must not be left to mere conjecture." In support of the rule of law contended for, counsel cites among others, the case of *Koslowski* v. *Thayer,* 66 Minn. 150, 68 N. W. Rep. 973; also *Moore* v. *Railway Co.,* 67 Minn. 394, 69 N. W. Rep. 1103, and other authority. The cases cited are not similar, as to their facts, to the case at bar, but the rule of law as announced in both of the cases is elementary; and in the case of *Koslowski* v. *Thayer* the Court said in the syllabus "that there was no evidence furnishing a reasonable basis for the conclusion that the negligence of the defendants was the proximate cause of the death of plaintiff's intestate." And in *Moore* v. *Railway Co.* the Court gave the same reason for reversing the judgment entered in favor of the plaintiff. Both cases support the rule that a verdict must not rest on mere conjecture, and that, where the evidence is such that "it is as reasonable to believe that the accident may have happened as the result of some other cause than that assigned, there can be no recovery." Applying this rule, the question arises whether there is evidence in this case, either direct or circumstantial, upon which the jury could have reasonably inferred that the deceased lost his life in the manner alleged in the complaint; and the crucial test is whether intelligent and honest men, after carefully weighing the evidence, might fairly differ upon this question. We are of the opinion that the evidence and conceded facts in this record furnish a legitimate basis for the inference that the deceased was killed in the manner charged in the complaint, and that this inference has a stronger support in the evidence than either the conjectural theories of the accident which have occurred to us, or those which have been suggested by the learned and ingenious counsel for the respondent, and hereinbefore mentioned; and we feel very confident that, after considering the testimony, intelligent and honest jurors may have fairly differed upon the question whether the deceased did or did not lose his life in the manner alleged. It may be conceded—and that without violating physical laws, or running counter to direct evidence—that there is a naked possibility that the deceased lost his life either by falling or being thrown off the end of the rear platform, or by falling or being thrown from the steps leading out of the car from the south side of the platform; but, as we have already said, these conjectural modes of death have, in our opinion, less support in the evidence than the manner of death alleged in the complaint. The skull of the deceased was found to be broken, and the expert testimony tends to show that he died from the effects of the accident immediately, or nearly so. This being the evidence, it

would, we think, be incredible to suppose that the deceased, after falling from the train on the south side thereof, should have passed to the north side of the track, where the body was found, and carried with him his several belongings which were found near the body, and also on the north side of the track. And it is only a little less incredible, in our opinion, under the evidence, to suppose that, after being hurled to sudden death from the end of the platform, the deceased, taking all of said belongings with him, made his way to the north side of the track, and that not a single article belonging to the decedent was left behind upon either the center or south side of the track. In our judgment, neither of these hypotheses finds much support in the evidence; and, on the other hand, the evidence, in our judgment, tends more particularly to support the theory of the accident pleaded by the plaintiff.

But counsel again contends that the conceded facts in the case tend to show that the negligence of the deceased, if he lost his life as alleged, contributed to the accident, and was itself the proximate cause thereof. If this contention can be sustained upon the record, the plaintiff cannot recover. But it should not be overlooked that negligence is a question of pure fact, and never becomes a question of law for the Courts, unless the facts, and all legitimate inferences therefrom, are conclusively established. In this case, the Court having reached the conclusion that the evidence raises at least a probability that the deceased was killed in the manner alleged, we are next to inquire whether, at the time the deceased passed through the north gate, and onto the ground, to his death, he knew, or should have known, that the steps were removed. Under the evidence, we think the inference is legitimate that the decedent did not in fact know that the steps were removed and not in place when he passed out through that opening. The train was moving rapidly, and was then midway between stations. Under these circumstances, to have opened the door, even to look out ahead, would have been an act of great imprudence, if the decedent knew of the defective condition in question. We could not indulge such a supposition, unless the evidence and all the circumstances clearly indicated the existence of such facts as tend to show that the deceased did know of the defective condition of the car. But there is a presumption of law which furnishes a rule appliable to a case like this. The law, out of regard to the instinct of self-preservation, will presume, prima facie, that a person who has suffered death by a railroad accident was at the time of the accident in the exercise of due care; and this presumption is not overthrown by the mere fact of the injury. *Flynn* v. *Railroad Co.,* 78 Mo. 195. See, also, *Adams* v. *Iron Cliffs Co.* (Mich.) 44 N. W. Rep. 270. In the absence, therefore, of an eye witness to the accident, it is the duty of the Court to assume, unless it is shown to the contrary, that at the time of the accident the party injured was in the exercise of due care. Plaintiff being entitled, under the authorities, to invoke in her aid the legal presumption of due care on the part of the deceased,

the defendant, therefore, has the burden to overthrow such presumption by evidence sufficient to do so. This burden is not sustained by the production of evidence which leaves the question of contributory negligence in doubt. If, under the evidence, reasonable men may honestly differ, the ultimate question is one of fact for the jury. As we have shown, the evidence as to the manner of the accident tends to show that the decedent did not in fact know of the absence of the car steps. The question, therefore, on this branch, is, was he bound to know the defective condition? Upon this feature we are confident that the question was one of fact, which should have been submitted to the jury, with instructions as to the prima facie presumption already referred to as applicable to cases of this kind. We are unable to see that this presumption has been overthrown by the evidence, or by the fact that the decedent was in charge of the train, as conductor. It does not appear from the evidence that the conductor actually visited this platform at any time during the day in question prior to the time he was killed; nor does it clearly appear that a train conductor would necessarily visit that particular platform in the discharge of his duties. We are clear that a Court ought not to assume, as a mere question of law—First, that a conductor of such a train must necessarily go upon such platform in the discharge of his duties; and, secondly, being there, must necessarily have observed the absence of the car steps. The steps were not removed while the deceased had charge of the train. The car in question had been delivered to the care of the deceased as a part of a regular through passenger train. It would seem that the decedent would be justified in assuming, under the circumstances, until it appears that he actually discovered the defect in question, that the entire train was safe and adequate as a through train for the conveyance of passengers. A sleeping-car porter, who was on duty on the train throughout the entire trip, testified: "I do not know when the steps were removed from the rear end of the sleeper. Know nothing about it particularly. I knew they were off when we landed at Havre. Made no examination of the platform at the time." It is well known that the duty of a sleeping-car porter is to assist passengers on and off sleeping cars, and yet this porter seemed to have been unaware of the absence of the steps until long after their removal; and, when their absence was discovered, he apparently paid little attention to the fact. This indifference of the porter may perhaps be explained further by another fact. The porter testified: "My instructions are to lock our rear doors, approaching all important stations. This is practiced at Grand Forks and Larimore. And we unlock the doors upon getting away from stations. The practice is to lock the rear door of the rear car, and the forward door of the forward car. One man has to go to the office to get his documents, and that is so one man can watch two cars, leaving the two doors open together." This evidence, we think, suggests a pertinent question of fact, i. e. whether the train conductor was aware of the custom of locking the rear door of a

rear sleeper on approaching important stations, and, if so, whether it was an act of negligence on his part, under the circumstances, not to inspect said platform, and discover the defects in question. At least, we are clear that intelligent men might reasonably differ, upon this feature of the alleged negligence of the decedent. The rules of law governing the question of contributory negligence have long since emerged from the realm of doubt. Primarily the question is one of pure fact, and where the evidence is either conflicting or fairly susceptible of different interpretations, or the inference from the evidence doubtful, the question is for the jury. The rule is the same where the evidence is undisputed, if different inferences therefrom may be fairly deduced by intelligent minds. We cite only a few cases from the mass of authority sustaining these propositions: *Railroad Co.* v. *Tobriner*, 147 U. S. 571, 13 Sup. Ct. 557; *Dunlap* v. *Railroad Co.* 130 U. S. 653, 9 Sup. Ct. 647; *Nugent* v. *Railroad Co.*, 80 Me. 62, 12 Atl. Rep. 797; *Payne* v. *Railroad Co.*, 83 N. Y. 572; *Adams* v. *Iron Cliffs Co.* (Mich.) 44 N. W. Rep. 270; *Galvin* v. *Mayor, etc.* (N. Y. App.) 19 N. E. Rep. 675.

A single question—one of practice—remains to be considered. The record shows that at the close of the plaintiff's evidence, and upon motion of the defendant's counsel, the trial court made an order dismissing the action. This order, after reciting the grounds upon which it is made, proceeds as follows: "Which motion, after being duly considered by the Court, is allowed, and the plaintiff's action is hereby dismissed. Done in open court this 8th day of December, 1897." This record shows that the clerk of the District Court entered this order in the judgment book, and it appears that the order was filed with said clerk on August 5, 1898. The notice of appeal, served August 8, 1898, is in the following language: "Please take notice that the plaintiff in the above-entitled action hereby appeals to the Supreme Court of this state from the judgment of dismissal made in said action on the 8th day of December, 1897, and entered in the office of the clerk of the District Court on the 5th day of August, 1898, in favor of the defendant and against the plaintiff, and from the whole thereof." This order of dismissal, when made, was merely an interlocutory order, and its character as such is not affected by being misdescribed as a judgment in the notice of appeal. Under the statute governing appeals in this state, as repeatedly construed by this Court, such orders are nonappealable orders. See In re Weber, 4 N. D. 119, 59 N. W. Rep. 523; *Field* v. *Elevator Co.*, 5 N. D. 400, 67 N. W. Rep. 147. See, to the same effect, *Locke* v. *Hubbard* (S. D.) 69 N. W. Rep. 588. But the notice of appeal also states that the plaintiff appeals from a judgment of dismissal in this action which was entered by the clerk of the District Court on the 5th day of August, 1898. An inspection of said judgment (a copy thereof being in the record) discloses that the same is a copy of the Court's order of dismissal, and nothing different or additional

thereto is contained in the same. The question is therefore presented whether this constitutes a judgment, within the meaning of the law. We are constrained to hold that it does. It embraces the disposition made of the case by the court below, and that disposition is incorporated in the judgment book. The language of the judgment is, "The plaintiff's action is hereby dismissed." This is explicit, and it is found written in the judgment book kept in the office of the clerk of the District Court. It is needless to say that this mode of entering judgment upon an order of dismissal is very slipshop, and not to be encouraged. Nor must we be understood as holding that an order simply directing that the action be dismissed would, if entered in the judgment book, operate as a judgment of dismissal. Upon this question no opinion is expressed. For reasons already advanced the judgment is reversed, and a new trial is ordered. All the judges concurring.