Liability of city — damages — sidewalks — snow and ice.
 1. A city may be held liable in an action for damages where the evidence, of, at least, some of the witnesses, which is believed by the jury, shows that a portion of a sidewalk has remained covered with ice and snow during the whole winter, and such ice and snow has been allowed to thaw and freeze and accumulate during such time, and no effort has been made by the city either to remove it, or cause the same to be removed, or to sprinkle it with sand or other substance in order to render it less dangerous; and the evidence also shows that such ice and snow was trampled into ruts, mounds, humps, and hillocks by the pedestrians during a thaw, and frozen in such condition, and that after a snow storm which later fell upon and largely hid the same, plaintiff slipped and fell thereon.
Sidewalks — defective condition — knowledge of — contributorynegligence.
 2. A traveler is not required to forego traveling upon a sidewalk merely because he has knowledge that it is in a somewhat defective condition. He has, as a general rule, a right to assume that it is safe, and when he is injured as a consequence of a defect of which he had previous knowledge, the mere fact of his previous knowledge does not per se establish contributory negligence.
Contributory negligence — question of fact — jury — undisputedfacts.
 3. The question of contributory negligence, whether it be of a defendant or the alleged contributory negligence of the plaintiff, is primarily and generally a question of fact for the jury. The question becomes one of law, *Page 602 
authorizing the withdrawal thereof from the jury, only when but one conclusion can be drawn from the undisputed facts.
Notice to city — continuance of obstruction — sidewalks.
 4. Notice to the city, in such a case, is sufficiently shown by proof of the long continuance of the accumulation.
Evidence — city charter — ordinances — assumption of control ofsidewalks — pleading.
 5. In an action against the city in such a case, it is not error to introduce in evidence the charter of the city, which gives it the power to require the owner or occupant of any premises to keep the sidwalks in front of and along the same free from snow or other obstruction, or the ordinances of the city which provide that the owners and occupants of the land shall clear the sidewalks of all accumulations of snow and ice within ten hours after the same have fallen or accumulated under liability to a fine, the court being justified in assuming that such charter and ordinances were introduced, not for the purpose of prejudicing the jury and making them believe that the owner or occupant would be ultimately liable in the action, but for the purpose of showing an assumption of control by the city, and its construction of its duty in relation to the sidewalks in question, as well as the right of the plaintiff to rely upon such assumption.
 Such evidence may be introduced, even though the ordinances and charter are not specially pleaded. Charter provisions and ordinances need only be pleaded when a violation of them is the foundation of the action.
Note. — The holding in JACKSON v. GRAND FORKS, as to the liability of a municipality for injuries from rough or uneven snow or ice accumulated from natural causes on a street or sidewalk not otherwise defective, is in harmony with the general rule, as shown by a review of the authorities in a note appended to this case as published in 45 L.R.A.(N.S.) 75, and in a preceding note in 13 L.R.A. (N.S.) 1105.
As to liability of municipality for injuries from smooth, level ice or snow accumulating from natural causes on a sidewalk, see note in 7 L.R.A.(N.S.) 933.
As to liability for injuries caused by freezing of water accumulating on walk by reason of artificial condition, see note in 20 L.R.A.(N.S.) 201.
As to effect of knowledge of obstruction or defect in highway or sidewalk on the question of contributory negligence of one injured, see note in 21 L.R.A.(N.S.) 638.
Action against the City to recover damages resulting from personal injuries sustained in slipping and falling on an icy sidewalk. Judgment for plaintiff. Defendant appeals.
Two separate actions were brought in the district court of Grand Forks county against the City of Grand Forks, — one by Lena Jackson, and the other by J.W. Jackson, her husband. One was to recover damages for personal injuries sustained, and the other was an action by the husband to recover for the loss of the services of his wife, medical expenses, etc., occasioned by said injury. The jury returned verdicts in both cases in favor of plaintiffs, and from the orders denying defendant's motion for judgment notwithstanding the verdict, and in *Page 603 
the alternative, for new trials, and from the judgments entered thereon, the defendant appeals. The two cases were tried together, as the facts were in every way similar, and no question having been made as to the allowance of damages, and the points raised on this appeal being directed merely to the question of liability, that is, of negligence, and the admission of evidence and the instructions of the court in relation thereto, the two cases can be discussed and decided together.
The material parts of the complaints, and which, alone, need be considered here, are as follows: "That among others, there devolved upon the defendant as such city, so organized as hereinbefore set forth, the duty of keeping and maintaining said sidewalk hereinbefore set forth along said Kittson avenue, in a reasonably safe condition for public travel by pedestrians; that notwithstanding its duties in that regard and in violation thereof, the defendant did negligently and carelessly permit, after notice thereof, the said sidewalk to be and become in a dangerous and unsafe condition for public travel by pedestrians as hereinafter set forth.
"That on the 5th day of February, A.D. 1908, the sidewalk on the south and southerly side of said Kittson avenue, along and in front of the northerly side of said block 29, along which sidewalk all of the perestrians as hereinbefore set forth usually traveled, was in a defective, unsafe, dangerous, and obstructed condition, by reason of the negligence of the authorities of the defendant, with respect thereto, in that and because the said city authorities had negligently and carelessly accumulated, or permitted to accumulate and negligently and carelessly remain upon said walk, a mass and covering of ice, which was humpy, hubbly, uneven, rough, smooth, and slippery, and which ice in said condition existed and had remained especially in front of lot 2 of said block 29, and at a point extending from about 1 foot to about 6 feet west of the east end of the board walk, which begins at the west side of the paved crossing at the westerly end of the cement walk, along and in front of and extending westerly from the mill of the Russell-Miller Milling Company, and which point was about midway in the width of the said board walk, and which said ice and snow in said condition had been negligently and carlessly permitted so to remain for a long period, to wit, for more than three days; that on the night of the 4th and the morning of the 5th of February, A.D. 1908, and prior to the time of the *Page 604 
accident as hereinafter set forth, there had been a fall of snow, which the defendant had negligently and carelessly permitted to remain upon and over said ice in such condition as hereinbefore set forth, which said snow added to and screened and shielded the said slippery and dangerous conditions which has been hereinbefore set forth; that of all the foregoing facts and conditions the defendant had due notice and knowledge.
"That on the evening of the said 5th day of February, A.D. 1908, between the hours of 6 o'clock and 8:30 o'clock, P.M., this plaintiff was lawfully traveling upon the said sidewalk, upon the south side of the said Kittson avenue, on foot, in a careful manner and without any negligence, when, at said point from 1 foot to 6 feet west of the east end of the board walk along the north side of block 29, of the plat of the original town of said city, which board walk begins at the west side of the paved crossing at the westerly end of the cement walk along and in front of the mill of the Russell-Miller Milling Company, and which point was about midway in the width of said board walk, owing to the defective, unsafe, dangerous, and obstructed condition of said walk as hereinbefore set forth, and the mass of ice hereinbefore described, this plaintiff slipped and fell, and was cast, thrown, and precipitated to the sidewalk and upon the ice thereon, and suffered the injuries as in the next paragraph hereof set forth."
The answer was, to all intents and purposes, a general denial, but included a plea of contributory negligence. At the opening of the trial, the defendant objected to the introduction of any evidence under the complaint on the ground and for the reason that it did not state facts sufficient to constitute a cause of action. This objection was overruled. The evidence showed that the sidewalk in question was a natural and regular method of communication between a territory consisting of about ten blocks which was south of the railway track and the business portion of the city, and that at the point in question there was no sidewalk on the other side of the street. The plaintiff, Lena Jackson, was injured while returning home between 7 and 8 o'clock on the evening of February 5, 1908. According to her testimony, when she reached the particular walk she slipped and fell. It was on the east end of the wooden sidewalk. "I had gotten onto the wooden sidewalk, and probably in there as near as I can judge from 1 to 3 feet. When I got in on the board walk I was walking along, and the first *Page 605 
thing I knew I was thrown off my feet. I slipped on the ice and was thrown off. I kind of slipped on one of those dumps, and it was caught against another raised dump there, and I fell in that manner that I got sitting on it; sat right on the leg. I fell towards the street. I fell with such force that I don't remember whether I heard anything particularly. I fell so I was sitting on my foot. It was twisted out like this, out this way, and I slipped on a lump, and it fell out and struck against another one so that I sat right on it. . . . The last time I had been down town was the Sunday before the accident, but on this day I was returning from down town. On this day I had also been down over this same path. Each of these three times when I went down town, while I lived at 203 Walnut street, I walked down Walnut street to Kittson avenue, on the west side. Yes, this side, we live on the east side. I walked down on the same side of the street that I lived on — and that would be the east side of Walnut — to Kittson avenue. . . . I remember that, prior to the 5th of February, 1908, on the south side of Kittson avenue, between where the railroad spur crosses Walnut and Fifth streets, there were two different kinds of sidewalk, one board and the other cement. The cement walk was from Fifth street to the alleyway. There is a little paved alleyway there. West of that was the wooden board walk, and that extended to the railroad track; then south of the railroad track on Walnut street, where the Duis property is. When I went down town these different times, I had occasion to notice the condition of the walk, the board walk between the spur there, the railroad spur and the alleyway, as to whether or not there was ice and snow on it. There was ice and snow on it, and that ice and snow had been on the board walk all winter. It had never been cleaned that I can remember. There had never been any sand or gravel or ashes or salt put on there that I can remember or that I could discover. The ice and snow that lay on the board walk was rough and uneven, kind of in humps and hollows. I should judge some of these humps would be from 2 to 3 inches, the highest, and some would be just to cover the sidewalk. Some of the ice would just cover the sidewalk. This condition that I speak of was general all over the wooden walk from the railroad track to the alleyway, between the cement and the wooden walk. I had gone down town on the afternoon of the accident, about 3 o'clock, and I had traveled over this same piece of walk. We went *Page 606 
to the Ladies' Aid, at Mrs. Johnson's, on the East side. Mrs. Nordland was with me. We remained over there till about between 6 and 7; then we came back and came to Mr. Nordland's tailor shop. We must have remained there until after 7 o'clock sometime. It must have been about 15 or 20 minutes past 7 when we started home. We started directly home. When we reached this board walk I slipped and fell. . . . I traveled over this walk on my way down town on the afternoon of the 5th. I didn't just measure to see how much loose snow there was there, but there wasn't more snow than could be shifted off when I fell. There was about, maybe 5 or 6 inches of loose snow standing on the sides of the walk. That day it was snowing partly in the forenoon. It was snowing quite a good deal in the forenoon or in the morning. I remember it had been snowing the day before. I couldn't just remember whether it was blowing the day before. It was not very cold in the forenoon. I think it was colder the day before. On the forenoon of this day it wasn't just pleasant because it was snowing. I couldn't just remember whether it was falling in large flakes. I started down town about 3 o'clock in the afternoon, and went over to the Ladies' Aid Society. As I was going down town my attention was particularly attracted to this piece of walk by the ice that was there. I noticed the ice was rough as it always was. I was acquainted with this condition before. I had gone down town several times within the weeks before that. During all of that time I had found the condition of that walk to be rough. This condition was the same all over the walk. I mean from the alleyway clear back to First avenue, — to First avenue crossing the switch on the railroad track. During all of this distance the snow and ice was in that bad condition that I speak of. Along the wooden walk was always bad. That is something like — I presume something like a hundred feet. It might be only 40 or 50 feet, I couldn't just remember. I saw the condition of that walk before this loose snow went on it the Sunday before the accident. The accident happened on Wednesday. We were out for a walk the Sunday before; my husband and Mr. and Mrs. Nordland. We walked down over this piece of walk. On Sunday I noticed that it was humps and hollows and rough. I noticed it at that time as being in that condition. My attention was called to it because we always had to walk there and we always had to be careful. We always had to be careful as we walked *Page 607 
over that walk. When we came to the walk on this day I remember we were careful because of the ice on the walk. That Sunday it was partly covered with snow, — not on Sunday, the day of the accident. On Sunday it was partly melting and kind of soft. Sunday was a mild day, and it was partly melting and kind of soft. It was soft so that it showed after each mark of our shoe. The snow was so soft that our shoe sank down pretty nearly to the walk. On the Sunday preceding the Wednesday on which I was hurt the snow and ice was soft and slushy, and I walked down through there with these people on that day. . . . It was not so bad that day when it was so soft, not so slippery as it was when it froze upon again. . . . The water was not standing, but it was just soft. The snow went to above the heels, of the shoes. The heels of the shoes went through the soft snow, pretty close to the walk at that time. On that day I noticed this condition of softness all over the entire length of the walk. The lumps were not smoothed down much. Walking through had a tendency to make it again lumpy. Where your footsteps sank in the snow the marks remained there. It wasn't very cold Sunday evening. It was a little colder on Monday. I wasn't down town Monday nor on Tuesday. The last time that I saw the walk prior to the accident it was in a soft condition. Before that Sunday I had noticed that the walk was icy and hard and rough, so that it was necessary to take extraordinary care when you came to it. That walk was in a bad condition on the afternoon of the 5th, when I came down town. It was rough and uneven like it always was before, and a little loose snow on the top. It was not storming much when I was going down town, — kind of blowing a little. When I reached this walk I noticed it particularly that day. I did not look at it particularly, only I knew that that was the icy place and we were to be careful, and we were careful. I couldn't just say how much loose snow was on the walk at that time. There was a little path so that you walked down the center of that single file. The path that we were on was kind of slippery. The snow wasn't packed down. It was kind of loose on top of that ice, when we walked on that and slipped it would take that snow off. We would slip as often as we walked along there. It was a common thing to slip and slide around on the ice in walking on that path. It was so rough that we could not help it. We were more liable to slip because it was always icy and slippery. I *Page 608 
could not just say where the ice was when the snow was on top. You could not see as well where to put your feet. The path went down the center of the walk. I could not say how high the sides of it were packed on the walk. It was 4 or 5 inches. It was worse some places when it started to blow a little. There were not very high drifts. Coming back that evening, I realized when I reached the end of this plank walk. I knew that I was stepping on the plank walk when I stepped out of the alleyway. We were not talking. Mrs. Nordland was ahead going home. The first remembrance that I have of trouble — what called my attention to the trouble that was coming — I felt I slipped on the ice and fell. I was conscious of how I fell. I fell to the street. . . . The ice was in the path then I was knocked off from that. There was no ice packed down in the path to amount to anything. I didn't pay much attention that night as to what was on the bottom of the path, but I noticed after I had slipped, when I sat there. I was sitting there before we could get somebody to help me up, sitting there and kind of looking around to see and I noticed the ice. I saw the ice. I could see it plainly where I had fallen. I scraped the snow off there. I looked at it enough to see that there was ice there. I saw that there was ice there, and that was all. I felt that I slipped on one of those humps. I could feel it when I fell. When you walked along there you could feel those humps under your feet, and I felt that and was conscious of those humps before I fell. I was conscious of those humps the moment I stepped onto the walk. Those lumps that were on there were the result of people's feet cutting through on that soft, wet slush on that Sunday and freezing in that condition. There was some cold weather between Sunday and Wednesday. It was colder than it was on Sunday. It was quite mild Sunday. It was not so mild Monday night as it was Sunday, and it got gradually colder, so on Wednesday evening, when I was hurt, it had frozen quite hard. It got colder Monday. When I went down town on the evening of Wednesday, it was quite frozen. The nearest street light to the place where I fell is — well, there is a street light on the corner of Fifth and Kittson avenue, and there is another where the beginning of Walnut street is, I think. I was about center way between the two lights. On Sunday it was soft, so it was water in the hollows. No, there was no water, just flattened out. On Sunday the snow and ice was partly *Page 609 
humpy. During the soft weather on Sunday I think some of the hummocks had been beaten down a little bit. It turned a little colder on Monday. Sunday night, of course, was a little colder than the evening. It was cold enough to freeze, Sunday. It was not so very cold on Monday. It was cold enough to freeze a little and to stay frozen. I wasn't out on the street at all Monday. On this Sunday when I was on the walk the snow was kind of melting. There was no path in the center of the walk on Sunday. The walk was the same all over. There were quite a few people moving on Sunday; quite a few going up and down on that street that day. It was a beautiful afternoon and most everybody was out walking." This testimony was corroborated by other witnesses for the plaintiff, and denied in part by some of the witnesses for the defendant.
Counsel for defendant and appellant urges that the proof shows contributory negligence on the part of the plaintiff, as a matter of law. We cannot, and do not, so hold. He urges that "the testimony discloses that she (the plaintiff) traveled over the walk almost daily, and was aware of its condition with reference to the accumulation of snow and ice. During the afternoon she had traveled over this sidewalk and had noticed its condition, and knew that several inches of snow covered the ice beneath. She could have avoided passing over this portion of the sidewalk, as the passage on either side was free from snow and ice. The accident was not caused by striking any obstacle. She slipped on the ice and fell. It is left entirely to conjecture whether she slipped on a perfectly smooth piece of ice or on a piece of rough ice; consequently she assumed all the risks of accident when she traveled over this walk." We may assume, and perhaps the evidence justifies us in assuming, the truth of all of these statements, with the exception of the conclusion, and that "the passageway on either side was free from snow and ice." On the latter question we think there is abundant evidence to show, or, at any rate, from which the jury might infer, that the whole sidewalk was covered with ice; that there was merely a path in the center more or less traveled and trampled down, and that the freedom from ice was on the sides, outside the sidewalk. The assumptions we have made, however, in no way support the contention of appellant. The point, in fact, has been so thoroughly passed upon by this court in previous decisions that it is no longer subject to controversy. "The question of negligence," says ex-Chief Justice Young, in the case of Pyke v. Jamestown, 15 N.D. 157,107 N.W. 359, "whether it be of a defendant or the alleged contributory negligence of a plaintiff, is primarily and generally a question of fact for the jury. The question becomes one of law, authorizing its withdrawal from the jury only when but one conclusion can be *Page 616 
drawn from the undisputed facts. `If the undisputed facts are of such a character that reasonable men might draw different conclusions or deductions therefrom, then the question of negligence must be summitted to the jury.' . . . The plaintiff was required to exercise such care as the condition of the street and her knowledge of it made reasonable under the circumstances.A traveler is not required to forego traveling upon a sidewalkbecause he has knowledge that it is defective. He has, as a general rule, a right to assume that it is safe, and when he is injured as a consequence of a defect of which he had previous knowledge, the mere fact of his previous knowledge does not, perse, establish contributory negligence. And this is also the rule when previous knowledge is coupled with absence of thought concerning the defect at the time of the injury, or momentary forgetfulness of it. Previous knowledge of a defect and forgetfulness of it are important facts to be considered in connection with all other circumstances, in determining whether the party injured was exercising reasonable care; but it is not negligence as a matter of law for a person who has knowledge of a defect not to remember it at all times and under all circumstances. The foregoing rules, which are founded upon reason and experience, are of general acceptance." See also Ouverson v. Grafton, 5 N.D. 281, 65 N.W. 676; Heckman v. Evenson, 7 N.D. 173,182, 73 N.W. 427, 430; Johnson v. Fargo, 15 N.D. 525,108 N.W. 243, 20 Am. Neg. Rep. 460; Carr v. Minneapolis, St. P. S. Ste. M.R. Co. 16 N.D. 217, 112 N.W. 972; Solberg v. Schlosser,20 N.D. 307, 30 L.R.A.(N.S.) 1111, 127 N.W. 91; Wells v. Lisbon,21 N.D. 34, 128 N.W. 308; Snee v. Clear Lake Teleph. Co. 24 S.D. 361,123 N.W. 729; Smith v. Yankton, 23 S.D. 352, 121 N.W. 848; Muri v. White, 8 N.D.D. 59, 76 N.W. 503; Cameron v. Great Northern R. Co.8 N.D. 124, 133, 77 N.W. 1016, 5 Am. Neg. Rep. 454. Under the rules laid down in these cases, and especially in the case of Pyke v. Jamestown, above quoted from, we are precluded from holding that as a matter of law the plaintiff was guilty of contributory negligence in this case. It was a question of fact for the jury, and not one of law for this court.
In passing upon this appeal we cannot be controlled by the fact that there is a conflict in the testimony. It is and must be sufficient for us that there is abundant testimony tending to support the contention of the plaintiff and respondent, if taken by itself. The rule seems to be *Page 617 
well established both in this and other jurisdictions, that "as a general rule, if there is any evidence which, standing alone, or considered apart from the opposing evidence, is, if believed by the jury, legally sufficient or might reasonably tend to support the verdict, though such evidence may not be of an entirely certain and satisfactory nature, it will not be disturbed; for upon the mere weight of evidence the jury are the judges, and though the evidence would not have satisfied the mind of the appellate court upon an original investigation, yet it will not sit to weigh conflicting testimony. . . . Inferences of fact are to be deduced by the jury, and whenever there is evidence from which the existence of facts sufficient to support a verdict might have been inferred, the verdict will not be disturbed." 3 Cyc. 348. In support of a verdict, indeed, the appellate court will consider the evidence on behalf of respondent in its most favorable light. All reasonable inferences and deductions are to be made in his favor. All conflicts in the testimony are resolved in favor of the respondent, and the court will take as true the strongest view of the testimony in his favor. Illinois C.R. Co. v. Abernathey, 106 Tenn. 722, 64 S.W. 3; Muri v. White,8 N.D. 59, 76 N.W. 503; Howland v. Ink, 8 N.D. 63, 76 N.W. 992; Cameron v. Great Northern R. Co. 8 N.D. 124, 77 N.W. 1016, 5 Am. Neg. Rep. 454; Nicoud v. Wagner, 106 Wis. 67, 81 N.W. 999. No matter what the evidence of the defendant may be, there is no little evidence on the part of the plaintiff to show that the walk in question had not been cleaned at any time during the winter, and the snow had been permitted to collect and remained upon the walk. There had been warm days during the winter, and the snow thus permitted to gather and collect had melted, or, rather, softened, and the trampling of pedestrians had caused it to form in mounds, hummocks, hillocks, and humps, etc.; that the mounds thus formed ranged in height from an inch to 4 inches; that this condition extended all over the walk, and that though perhaps the roughness had been increased by the thaw on the Sunday previous to the accident, the walk had remained rough and dangerous for a long space of time, and that at no time was there any attempt either to remove the ice and snow or to place sand or ashes or gravel thereon, so as to render it less dangerous. So, too, there is no attempt to prove by either party that the snow which fell on Monday and Tuesday was removed from the walk, or attempted to be so removed. *Page 618 
There is also evidence on the part of the plaintiff which tends to show that the other walks in the southern portion of the city were, as a rule, in a much better condition, and that the walk in question and that in front of what is known as the Duis Warehouse, were the worst walks in the area in question.
There seems to be no little conflict on the general proposition of the liability of cities for accidents occasioned from icy sidewalks. It seems to be generally conceded that the municipality is not liable in all instances, and especially not liable for ice which suddenly is formed by sleet or rain which freezes before it can be reasonably removed, or for snow which has been packed down under the same circumstances. Perkins v. Fond du Lac, 34 Wis. 435; Grossenbach v. Milwaukee, 65 Wis. 31,56 Am. Rep. 614, 26 N.W. 182; Chamberlain v. Oshkosh,84 Wis. 289, 19 L.R.A. 513, 36 Am. Rep. 928, 54 N.W. 618. Some courts even go further and seem to hold that a city is not liable in any event, unless there is palpable defect in the construction of the walk. The general rule, and, we believe, the better rule, however, is that the liability should be based upon negligence and upon what is reasonable under the circumstances, paying attention to the climatic conditions. What would be reasonable, for instance, in southern Illinois might not be reasonable in North Dakota or Montana, but reasonableness, and a reasonable regard for public safety, should be the criterion. The municipality under this rule is bound merely to exercise reasonable care and diligence to render the sidewalk safe. Where the sidewalk is properly constructed, the mere fact that it is rendered slippery by the presence of ice or snow will not, in itself, render it liable for resulting injuries. Where, however, snow or ice is suffered to remain for a long time until it forms into mounds or ridges, and becomes, itself, an obstruction, as it were, to the sidewalk, or on account of its depth and quantity, a mass which in every thaw may be trampled into deep ruts and ridges, which, in the night following or in a close succeeding freeze, may become dangerous and occasion for further obstruction, the municipality may be held liable. It will be held liable, if not for the accumulation, then for not using reasonable means, such as scattering and, gravel, or ashes, to prevent the danger. If, indeed, the evidence in the case before us had not shown that the ice and snow had been allowed to accumulate at this part for a long period of time, and that *Page 619 
the place was much more dangerous and obstructed than the sidewalks in the locality, generally, we would have hardly felt like sustaining the verdict. The evidence, however, being such as it is, we feel restrained from interfering with it. We believe this view of the case is abundantly supported by the authorities. Even Wisconsin, which is cited by appellant in support of his proposition that mere slipperiness or hardened snow will not render a city liable, is authority for it. In Cook v. Milwaukee,24 Wis. 270, 1 Am. Rep. 183, that court says: "If, however, ice or snow is suffered to remain upon a sidewalk in such uneven or rounded form that a person cannot walk over it using due care, without danger of falling down, that, it seems, does constitute a defect for which the city or town will be liable." In the case of Salzer v. Milwaukee, 97 Wis. 471, 73 N.W. 20, indeed, we find a case which is very similar to the one at bar. The action was for the recovery of damages for an injury which the plaintiff received by falling upon an icy sidewalk. The evidence tended to show that "for a long time prior to plaintiff's accident, snow and ice had been suffered to remain on the sidewalk, until it had become a large accumulation at the place of the accident, where, by reason of the travel passing over it, it had become uneven, slippery, and dangerous; that on the day preceding the accident there had been a new fall of snow, accompanied by a thawing condition which melted the old snow and removed much of it; that travel over the new snow and the slush of the old made the whole uneven and full of deep tracks; that during the night previous to the accident the weather turned suddenly cold and caught this soft snow and slush in this condition and turned it into hard and glassy ice, with all this unevenness upon it; during the next morning the plaintiff, in attempting to pass over it, fell and was injured. He knew of its condition before he came upon it." There was a demurrer ore tenus, motion for a nonsuit, a special verdict, and motion for a new trial. The supreme court, it is true, reversed the judgment, but only because of inconsistencies in the special verdict. On the question of liability it said: "The point urged against the adequacy of the complaint is that it alleges merely an icy and unsafe condition of the sidewalk at the time of the accident, caused by a sudden change of weather. It is urged that the defendant cannot be held responsible for that condition. It is true that for a defect in a sidewalk which is mere iciness or slipperiness *Page 620 
produced by natural causes, the city is not responsible, yet when such condition concurs with a previous defect for which the city is responsible, the city is liable for damages. . . . The complaint alleges such previous defective condition by reason of snow and ice which had been suffered to accumulate there in an uneven, slippery, and dangerous condition. It also alleges that such condition had continued for a long time. It was not error to overrule the demurrer ore tenus." See also 15 Am. Eng. Enc. Law, 2d ed. 447; Paulson v. Pelican, 79 Wis. 15, 48 N.W. 715; Collins v. Council Bluffs, 32 Iowa, 324, 7 Am. Rep. 200; Huston v. Council Bluffs, 101 Iowa, 33, 36 L.R.A. 211, 69 N.W. 1130, 1 Am. Neg. Rep. 227; Templin v. Boone, 127 Iowa, 91, 102 N.W. 789; Tobin v. Waterloo, 131 Iowa, 75, 107 N.W. 1031; Storm v. Butte,35 Mont. 385, 89 Pac. 726.
The question is, after all, a question of public policy, which the legislature should primarily determine, and it is perhaps well to call attention to the fact that during the session of 1909 a bill was introduced in the legislature, as house bill No. 62, which sought to exempt cities from liability in such cases. The bill failed of passage. This action was, of course, subsequent to the accident in question, and is not controlling in this case. It is a fact, however, which is well worthy of notice.
There is no merit in the objection that the complaint does not allege, and the proof does not show, notice to the city. The complaint alleges "that of all the foregoing facts and conditions the defendant had due notice and knowledge;" and the evidence, at least the evidence of plaintiff's witnesses, tends to show that the ice and snow was allowed to accumulate during the whole of the winter. This would be sufficient notice under any and all of the authorities.
Objection is also made to the introduction in evidence of the charter of the city, and the ordinances of the city of Grand Forks. The provision of the charter (subdivision 14, § 47) reads as follows: "The council shall have power to regulate the use of sidewalks and all structures thereunder, and to require the owner or occupant of any premises to keep the sidewalks in front and along the same free from snow or other obstruction." Section 2770, Rev. Codes 1905, reads: "All money collected from special assessments for building or repairing sidewalks shall be kept in a fund to be called `Sidewalk Special Assessment Fund,' *Page 621 
and warrants shall be drawn on such funds for the payment of the cost of building and repairing all sidewalks, and the city shall in no case be liable on any contract for the building or repairing of sidewalks for any sum whatever raised by taxation." Section 108 of the ordinances provides: "The occupant of each and every parcel of land, and the owner of each and every unoccupied lot or parcel of land, in the city, adjoining any street and along which sidewalks have been built, shall clear the sidewalks on or along such lot or piece of land of all accumulations of snow and ice, within ten hours after the same has fallen or accumulated, or by 2 o'clock in the afternoon of the following day if the same shall have fallen in the nighttime, and shall keep such sidewalks free from accumulations of snow, provided that no person shall be required to clean said sidewalks during the continuance of any snow storm on Sunday. Any person who shall violate the provisions of this section shall, upon conviction, be subject to a fine of not less than $5 or more than $25, and a like fine for every 8 days' continuance of such failure to observe the provisions of this section." The objection made on the trial to the introduction of these provisions of the charter was that "it was incompetent, irrelevant, and immaterial, not necessary to offer a statute in evidence;" and of the ordinances, that it was "incompetent, irrelevant, and immaterial, not binding upon the city in any action of this kind." The objection made in the brief and argument of counsel is that the charter of the city and ordinances were not pleaded, and in addition thereto, that they were incompetent and immaterial. It is quite clear that the first of these objections cannot be relied upon here, as it was not raised upon the trial. Even if it can be raised under this objection, we think there is no merit in it. Charter provisions and ordinances only need to be pleaded when a violation of them is the foundation of the action, and in none of the cases cited by counsel for appellant was the action brought against the city, but against some third person who was charged with having violated an ordinance, or against whom the ordinance was sought to be introduced in evidence. The cases he cites are Blanchard v. Lake Shore M.S.R. Co. 126 Ill. 416, 9 Am. St. Rep. 630,18 N.E. 803; Richter v. Harper, 95 Mich. 227, 54 N.W. 770; Gardner v. Detroit Street R. Co. 99 Mich. 182, 58 N.W. 51, 4 Am. Neg. Cas. 163; West Jersey R. Co. v. Paulding, 58 N.J.L. 178, 33 Atl. 381. These cases are not in point. In the case *Page 622 
at bar no right of recovery is sought under the ordinances, but the same are introduced in an action against the city merely for the purpose of showing an admission, as it were, by such city, and an assumption by it of responsibility for the ice and snow upon the sidewalks, and on the questions of contributory negligence the right of the plaintiff to rely on such assumption. In such a case such ordinances can be introduced, even without being pleaded. They are competent and relevant, not because a recovery is sought thereunder, but because, as we have before stated, they are evidence of an assumption of control by the city. It is, indeed, well established in the authorities that such assumption of control is pertinent evidence in a case. It has been held, for instance, that a city is not primarily liable for failing to light its streets, or for establishing a system of street lighting, but that if, on the other hand, it has assumed the duty of lighting, it will be expected and required to do so in a reasonably safe manner, and that the public may rely upon its reasonable performance and its reasonable continuance. See Bloomington v. Bay, 42 Ill. 503, 508; Joliet v. Verley,35 Ill. 58, 85 Am. Dec. 342; Miller v. Bradford, 186 Pa. 164,40 Atl. 409; Birmingham v. Starr, 112 Ala. 98, 20 So. 424; Prather v. Spokane, 29 Wash. 549, 59 L.R.A. 346, 92 Am. St. Rep. 923,70 Pac. 55; Rowe v. Ballard, 19 Wash. 1, 52 Pac. 31; Taake v. Seattle, 18 Wash. 178, 51 Pac. 362; Brabon v. Seattle,29 Wash. 6, 69 Pac. 365. The fact that in this case the city had imposed upon the lot owners the duty of cleaning the ice from the sidewalks, and it had made it an offense not to do so, surely was pertinent evidence of an assumption by the city of that duty, or of its understanding that such duty was devolved upon it. It would be a poor argument, indeed, that a lot owner and taxpayer could be fined under the city ordinances for not cleaning the ice from his sidewalk, but that he had no right to rely upon the enforcement of such ordinances against others; or that, when it came to the question of his own individual safety, that the city had nothing to do with the safety of the thoroughfares in this respect. We think that the charter and ordinances were admissible in evidence, and that there is abundant authority in support of our holding. Providence v. Clapp, 17 How. 161, 15 L. ed. 72; Lincoln v. Power, 151 U.S. 436, 38 L. ed. 224,14 Sup. Ct. Rep. 387; Pomfrey v. Saratoga Springs, 104 N.Y. 459, 11 N.E. 43; Levy v. Salt Lake City, 5 Utah, 302, 16 Pac. 599; *Page 623 
6 Thomp. Neg. Sec. 7868, p. 763; McNerney v. Reading,150 Pa. 611, 25 Atl. 57; Putnam v. Detroit United R. Co. 164 Mich. 342,129 N.W. 860; Robertson v. Wabash, St. L. P.R. Co. 84 Mo. 119; Faber v. St. Paul, M. M.R. Co. 29 Minn. 465, 13 N.W. 902.
Such being our conclusions in the case, it follows that the instructions of the court to the jury were, to all intents and purposes, correct, and imposed no prejudice upon the defendant.
The judgments of the District Court are each affirmed.
 *Page 234